UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
                                                                    :
ELY EDDI,                                                           :
                                                                    :
                                Plaintiff,                          :
                                                                    :
              -v-                                                   :        24 Civ. 520 (JPC)
                                                                    :
ELLIOT ANTEBI, RACHEL ANTEBI, and                                   :        OPINION AND ORDER
ELLEMARK MANAGEMENT, LLC,                                            :        ADOPTING REPORT AND
                                                                    :        RECOMMENDATION IN
                                Defendants.                          :        PART
                                                                    :
--------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiff Ely Eddi brings this action against Defendants Elliot Antebi ("Elliot"), Rachel

Antebi ("Rachel"), and Ellemark Management, LLC ("Ellemark"; collectively with Elliot and

Rachel, "Defendants"), for breach of fiduciary duties, breach of contract, promissory estoppel,

accounting, misappropriation of funds, and unjust enrichment.  Plaintiff invokes this Court's

diversity jurisdiction pursuant to 28 U.S.C. § 1332 because he is a citizen of Florida and

Defendants are New York citizens.  On November 20, 2025, the Honorable Robyn F. Tarnofsky,

to whom this case has been referred for general supervision of pretrial proceedings and to issue a

Report and Recommendation on dispositive motions, recommended that the undersigned partially

grant and otherwise deny Defendants' motion to dismiss the Second Amended Complaint.  Dkt.

133 ("R&R") at 36-37.

Defendants timely objected to the Report and Recommendation on December 4, 2025.

Dkt. 137 ("Objections").  For the reasons below, the Court adopts the Report and Recommendation

in part.  The Court denies Defendants' motion to dismiss on *Colorado River* abstention grounds.

The Court also declines to dismiss Plaintiff's direct claims, and dismisses his derivative claims. Lastly, the Court orders an evidentiary hearing to resolve disputed facts material to venue.

## I.   Background

### A.   Facts[1]

Plaintiff and Elliot are cousins who from approximately 2016 to 2023 engaged in a series of transactions connected to real estate in New York City and Florida.  SAC ¶¶ 10, 14-16, 31, 40-42, 51-52, 57-59, 72-74, 99, 121, 127.  Elliot and Rachel are married.  *Id.* ¶ 9.  Elliot also is the sole member of Ellemark, a limited liability company ("LLC") existing under Ohio law.  *Id.* ¶ 5. Plaintiff and Elliot invested in properties together, and at various points Plaintiff loaned money to Elliot and Rachel.  Then the business relationship soured, and Plaintiff now alleges that Elliot acted in his own interests, diverted funds to himself and Rachel that should have gone to Plaintiff, mismanaged their LLCs' finances, misrepresented material facts regarding financial transactions involving the properties, and failed to repay loans that Plaintiff had given him and Rachel.  *Id.* ¶¶ 130-223.

Plaintiff and Elliot bought and managed their real estate investments using six LLCs: 169-171 BH LLC ("169-171 LLC"), 262 BH LLC ("262 LLC"), Downtown BH LLC, Downtown NS LLC, SOMI Retail BH LLC ("SOMI LLC") (collectively, the "Non-Party LLCs"), and S Miami Retail BH LLC ("S Miami LLC").  *Id.* ¶¶ 14-93, 99-120.  SOMI LLC and S Miami LLC exist under Florida law, *id.* ¶ 99, so the Court refers to them as the "Florida LLCs"; the remaining LLCs exist under Delaware law, *id.* ¶¶ 14, 40, 57, 72, so the Court refers to them as the "Delaware

---

[1] These factual allegations are taken from the Second Amended Complaint, Dkt. 98 ("SAC"), and are assumed truly solely for purposes of this Opinion and Order, with all reasonable inferences drawn in Plaintiff's favor. *See Baldwin v. Interscope Records, Inc.*, No. 19 Civ. 8923 (JGK), 2021 WL 847976, at *1 (S.D.N.Y. Mar. 4, 2021).

LLCs."  The parties never entered into any operating agreements or appointed any managing members for any of the LLCs.  *See id.* ¶¶ 17-18, 43-44, 60-61, 75-76, 104-107.

Plaintiff's claims mostly arise from transactions involving his investments in and Elliot's management of each entity.  In addition, Plaintiff alleges that Elliot failed to repay two loans that Plaintiff made separate and apart from the property transactions.

### 1.    169-171 LLC

Plaintiff and Elliot are the only members of 169-171 LLC, a Delaware LLC established in 2019 to own a property at 169-171 First Avenue in Manhattan.  *Id.* ¶¶ 14-16.  In approximately fall 2019, Plaintiff invested more than $2 million in 169-171 LLC and agreed with Elliot that Plaintiff would hold a membership interest proportionate to that investment.  *Id.* ¶ 23.  Even though Plaintiff and Elliot had not appointed a managing member, Elliot unilaterally acted in that role.  *Id.* ¶¶ 18-19.  He retained Ellemark to manage 169-171 LLC without Plaintiff's permission and without disclosing to Plaintiff that Elliot was Ellemark's sole member.  *Id.* ¶ 20.

Plaintiff alleges that Elliot, acting on his own and through Ellemark, breached his fiduciary duties in multiple ways.  First, Elliot altered 169-171 LLC's records to reflect that Plaintiff owned only thirty percent of the company because, as Elliot later admitted to Plaintiff, he needed to represent that he was the majority owner of 169-171 LLC for other investments.  *Id.* ¶¶ 22(i), 25-26.  Elliot further admitted to Plaintiff that in doing so, Elliot collected a substantial portion of Plaintiff's investment in 169-171 LLC through Ellemark, thereby profiting from Plaintiff's membership interest.  *Id.* ¶¶ 26-27.  Second, Elliot, or an entity associated with him and Rachel, took a commission or referral fee in connection with the mortgage that 169-171 LLC took out to purchase the property at 169-171 First Avenue.  *Id.* ¶¶ 22(vi), 28, 30.  The interest rate on that mortgage was above-market.  *Id.* ¶ 29.  Third, when 169-171 LLC could not pay its debts in 2021 through 2023, Elliot solicited a loan from Plaintiff in excess of $1.3 million and represented to

Plaintiff that he would also lend money to the company proportionate with his share as a member. *Id.* ¶¶ 31-34.  But Elliot did not in fact lend any funds.  *Id.* ¶ 34.  Fourth, after Elliot sold a portion of 169-171 LLC's property without Plaintiff's knowledge or consent, Plaintiff was entitled to a portion of the proceeds, but Elliot and Ellemark instead distributed that portion to Elliot, Rachel, or an entity associated with them.  *Id.* ¶ 35.  Fifth, since approximately October 2023, Elliot and Ellemark have denied Plaintiff access to 169-171 LLC's books and records, blocking Plaintiff from reviewing annual Schedule K-1 forms that identified Plaintiff's share and the entity's profits and losses and directing 169-171 LLC's accountant to refuse to provide that information to Plaintiff. *Id.* ¶¶ 37-39.

### 2.    262 LLC

Plaintiff and Elliot are the only members of 262 LLC, which was formed in 2018 under Delaware law to own a property at 262 Mott Street in Manhattan.  *Id.* ¶¶ 40-42.  As with 169-171 LLC, Plaintiff and Elliot agreed that Plaintiff would have a membership interest proportionate to his investment; they did not appoint a managing member, yet Elliot unilaterally acted as its managing member; and Elliot retained Ellemark as the company's manager without Plaintiff's permission and without disclosing to Plaintiff that Elliot was Ellemark's sole member.  *Id.* ¶¶ 44-47.

Plaintiff alleges that Elliot, acting on his own and through Ellemark, breached his fiduciary duties in multiple ways.  First, Elliot and Ellemark arranged to divert to Elliot at least $184,000 in distributions that Plaintiff was entitled to based on his membership interest.  *Id.* ¶ 51.  In addition, in February 2022, without Plaintiff's knowledge, Elliot sold the property located at 262 Mott Street.  Elliot and Ellemark then diverted the sale proceeds that Plaintiff was entitled to receive to Elliot, Rachel, or one of their associated entities.  *Id.* ¶¶ 49(v), 52. Elliot, Rachel, or one of their associated entities took a commission or finder's fee in connection with that sale.  *Id.* ¶ 53.  Elliot

4

and Ellemark also refused to give Plaintiff access to 262 LLC's books and records, including its Schedule K-1 forms, and directed the company's accountant not to provide that information to Plaintiff. *Id.* ¶¶ 54-56.

### 3.    Downtown BH LLC

Plaintiff and Elliot are the only members of Downtown BH LLC, which was formed in 2016 under Delaware law to own assets. *Id.* ¶¶ 57-59.  As with the other LLCs, the parties agreed that Plaintiff would have a membership interest proportionate to his investment, and though they did not appoint a managing member, Elliot unilaterally acted as such and retained Ellemark as Downtown BH LLC's manager without Plaintiff's permission and without disclosing that Elliot owned Ellemark. *Id.* ¶¶ 62-64.

Plaintiff alleges that Elliot and Ellemark breached their duty of care with respect to Downtown BH LLC, causing losses to increase from approximately $2,000 in 2016 to $200,000 in 2021. *Id.* ¶ 67.  Elliot and Ellemark improperly claimed distributions and losses for Elliot that were properly Plaintiff's, *id.* ¶ 66(i), and caused Downtown BH LLC to pay distributions to Elliot and Rachel or their entities when they should have been paid to Plaintiff, *id.* ¶ 66(ii).  In addition, they caused Downtown BH LLC to pay funds to Ellemark. *Id.* ¶¶ 66(iii), 68.  Elliot and Ellemark refused Plaintiff access to Downtown BH LLC's books and records and instructed its accountant not to share that information. *Id.* ¶¶ 69-71.

### 4.    Downtown NS LLC

Plaintiff and Elliot are members of Downtown NS LLC, which was organized in 2018 under Delaware law to own real estate. *Id.* ¶¶ 72-74.  The parties agreed that Plaintiff's membership interest would be proportionate to his investment. *Id.* ¶ 77.  Notwithstanding that he was never appointed a managing member, Elliot acted as such and retained Ellemark to act as Downtown NS LLC's manager without Plaintiff's knowledge. *Id.* ¶¶ 76, 78-79.

5

Between 2018 and 2021, Elliot and Ellemark entered into at least three above-market loans that were collateralized with assets belonging to Downtown NS LLC without Plaintiff's knowledge or consent. *Id.* ¶ 82. Elliot, Rachel, or an entity associated with them received commissions in connections with those loans, *id.* ¶¶ 81(v), 83, which Elliot obtained by falsely misrepresenting to the lenders that Plaintiff consented to the pledges of Downtown NS LLC's assets, *id.* ¶ 84. Yet Plaintiff learned about these loans only in 2023. *Id.*

During that same period, Downtown NS LLC's losses multiplied, and Elliot deceived Plaintiff into contributing funds to pay off Downtown NS LLC's debts by representing that all of the company's members were making contributions. *Id.* ¶¶ 86-88. Relying on those representations, Plaintiff made capital contributions in 2018, 2019, 2020, and 2021 to fund the company's debt payments. *Id.* ¶ 89. But neither Elliot nor any other member of Downtown NS LLC joined Plaintiff in making a contribution proportionate to their membership interest. *Id.* ¶ 90. Plaintiff confronted Elliot in 2023 about this, and Elliot promised that he and the other members of the LLC would reimburse Plaintiff for his excess capital contributions. *Id.* ¶ 91. After nobody did so, Elliot offered to buy Plaintiff's membership interest in Downtown NS LLC at a significant discount, but Plaintiff rejected the offer. *Id.* ¶ 92.

Other injuries from Elliot and Ellemark's alleged mismanagement of Downtown NS LLC include: (i) Downtown NS LLC's right to receive rents from tenants was assigned to a lender in January 2022; (ii) a lien was placed on Downtown NS LLC's property in 2022; and (iii) Unsafe Structure Orders were issued against Downtown NS LLC's property in March 2022 and June 2023. *Id.* ¶ 93.

### 5.    SOMI LLC and S Miami LLC

Plaintiff and Elliot are the only members of SOMI LLC, which was organized in 2016 under Florida law. *Id.* ¶¶ 99-100. Here too, they agreed that Plaintiff's membership interest would

6

be proportionate to his investment interest. *Id.* ¶ 101. SOMI LLC, in turn, is a member of S Miami LLC (which also exists under Florida law) and owns at least fifty percent of it. *Id.* ¶¶ 99, 102. Notwithstanding that no managing member was ever appointed for SOMI LLC and S Miami LLC, Elliot unilaterally acted as a managing member of both without Plaintiff's knowledge or approval. *Id.* ¶¶ 106-109.

Elliot breached his fiduciary duty of loyalty by causing SOMI LLC and S Miami LLC to distribute assets to him, Rachel, or their associated entities that "should have been distributed to Plaintiff." *Id.* ¶ 139(i)-(iii); *see id.* ¶¶ 112-113. Elliot's alleged mismanagement caused both entities to suffer substantial losses every year from 2017 until 2021. *Id.* ¶ 114. As with their other LLCs, Elliot barred Plaintiff from accessing the books and records of SOMI LLC and S Miami LLC. *Id.* ¶¶ 115-120.

### 6.    The 2020 Loan and the 2021 Guaranty

Elliot additionally failed to repay two loans that he had received from Plaintiff. In approximately July 2020, Plaintiff loaned Elliot $310,000 (the "2020 Loan"). *Id.* ¶¶ 94-95. Elliot promised to repay the loan within ninety days plus 1.5 percent interest, but he has only made partial repayment of the loan principal. *Id.* ¶¶ 95, 97-98.

In approximately October 2021, Elliot and Rachel asked Plaintiff to pledge personal property to secure a $1.5 million loan to Rachel that would allow her and Elliot to buy a property in Brooklyn (the "2021 Guaranty"). *Id.* ¶¶ 121-122. They promised Plaintiff that they would repay the loan, with interest and fees, by the end of 2021 from the proceeds of a sale of property in Miami. *Id.* ¶ 122. They further assured Plaintiff that they had already secured a buyer for the Miami property. *Id.* Plaintiff obliged and on approximately October 26, 2021, pledged and collateralized his personal property to secure the loan. *Id.* Rachel did not repay the loan even

7

though she and Elliot had closed on the sale of the Miami property in approximately November 2021, *id.* ¶¶ 124-125, and Plaintiff forfeited the collateral, *id.* ¶ 126.

**B.    Procedural History**

On January 24, 2024, Plaintiff filed this diversity action against Defendants and 169-171 LLC, 262 LLC, Downtown BH LLC, Downtown NS LLC, SOMI LLC, and S Miami LLC.  Dkt. 1.  The next day, he filed a corrected Complaint.  Dkt. 20.  On February 12, 2024, Plaintiff filed a letter voluntarily dismissing 169-171 LLC, 262 LLC, Downtown NS LLC, Downtown BH LLC, SOMI LLC, and S Miami LLC.  *See* Dkt. 28 ("Feb. 12, 2024 Letter") at 2; *see also* Dkt. 30 (Feb. 14, 2024 Order dismissing those parties pursuant to Federal Rule of Civil Procedure 41(a)(2)).  On February 19, 2024, Plaintiff filed his First Amended Complaint.  Dkt. 31.  After Ellemark filed a pre-motion letter in anticipation of a motion to dismiss, Dkt. 35, Plaintiff sought leave from the Court to file a Second Amended Complaint addressing the deficiencies that Ellemark raised in its letter, Dkt. 37.  The Court referred the case to Judge Tarnofsky on May 22, 2024, for general pretrial supervision, Dkt. 49, and she ordered Plaintiff to file a motion to amend his First Amended Complaint, Dkt. 50.  Plaintiff filed the motion on May 29, 2024, Dkts. 54-55, which Defendants opposed, Dkt. 56, but Plaintiff withdrew the motion on December 18, 2024, while the parties discussed a settlement, Dkt. 74.  Following unsuccessful discussions and a substitution of Plaintiff's counsel, Dkt. 81, Plaintiff renewed his motion for leave to amend on March 13, 2025, Dkts. 87-89.  Defendants opposed the motion on April 10, 2025, Dkts. 93-94, and Plaintiff replied on April 24, 2025, Dkt. 95.

On June 2, 2025, Judge Tarnofsky granted Plaintiff leave to file a Second Amended Complaint, Dkt. 96, which he did on June 6, 2025, Dkt. 98.  The Second Amended Complaint pleads twelve causes of action:

1.  Breach of fiduciary duties—in connection with 169-171 LLC, 262 LLC, Downtown BH LLC, Downtown NS LLC, and SOMI LLC—against Elliot and Ellemark ("Count I"), SAC ¶¶ 130-144;

2.  Breach of contract—of the investment agreement for 169-171 LLC—against Elliot ("Count II"), *id.* ¶¶ 145-152;

3.  Promissory estoppel—in the alternative to Count II—against Elliot ("Count III"), *id.* ¶¶ 153-159;

4.  Breach of contract—of the investment agreement for 262 LLC—against Elliot ("Count IV"), *id.* ¶¶ 160-167;

5.  Promissory estoppel—in the alternative to Count IV—against Elliot ("Count V"), *id.* ¶¶ 168-173;

6.  Breach of contract—of the 2020 Loan agreement—against Elliot ("Count VI"), *id.* ¶¶ 174-181;

7.  Promissory estoppel—in the alternative to Count VI—against Elliot ("Count VII"), *id.* ¶¶ 182-187;

8.  Accounting—seeking access to the books and records of 169-171 LLC, 262 LLC, Downtown BH LLC, Downtown NS LLC, and SOMI LLC—against Elliot ("Count VIII"), *id.* ¶¶ 188-194;

9.  Misappropriation—of "funds of Downtown BH LLC for [Elliot] and Ellemark," *id.* ¶ 197—against Elliot and Ellemark ("Count IX"), *id.* ¶¶ 195-199;

10. Breach of contract—of the 2021 Guaranty agreement—against Elliot and Rachel ("Count X"), *id.* ¶¶ 200-207;

11. Promissory estoppel—in the alternative to Count X—against Elliot and Rachel ("Count XI"), *id.* ¶¶ 208-217; and

12. Unjust enrichment—for "retaining moneys that rightfully belonged to Plaintiff," *id.* ¶ 219—against all three Defendants ("Count XII"), *id.* ¶¶ 218-223.

On July 7, 2025, Defendants moved to dismiss the Second Amended Complaint "pursuant to [Federal Rule of Civil Procedure] 12(b), and for such other relief as the Court deems just and proper." Dkt. 100 (Notice of Motion); *see* Dkts. 102 ("Motion Br."),[2] 103. The Motion seeks dismissal on three grounds: first, that the Court should abstain from exercising jurisdiction under the *Colorado River* abstention doctrine in light of Plaintiff's lawsuit against Elliot and Rachel in New York Supreme Court, Kings County (the "New York Action");[3] second, that the Court must in equity and good conscience dismiss the action under Federal Rule of Civil Procedure 19 because Plaintiff's derivative claims make the Non-Party LLCs indispensable parties, except their joinder would destroy subject matter jurisdiction; and third, that venue is improper. Plaintiff opposed the motion on August 4, 2025, Dkts. 106, 107 ("Opposition"), and Defendants replied on August 18, 2025, Dkt. 113. On August 29, 2025, Judge Tarnofsky ordered Plaintiff to file a letter clarifying his position on Defendants' motion to dismiss for improper venue, advising whether he seeks

---

[2] Defendants initially filed their moving brief at Docket Number 101 on July 7, 2025, though failed to attach Exhibit A. The same day they refiled that brief, now with Exhibit A attached, at Docket Number 102, evidently without opposition from Plaintiff. The Report and Recommendation treated the filing at Docket Number 102 as the operative moving brief. This Court does, too.

[3] Plaintiff filed the New York Action on March 21, 2025, against Elliot, Rachel, and Seventeen Truck LLC, alleging breach of contract, promissory estoppel, breach of fiduciary duties, and unjust enrichment, and seeking a declaratory judgment, arising from a real estate transaction in Florida and the $1.5 million loan guaranty referred to herein as the 2021 Guaranty. *See* Motion Br., Exh. A ("State Court Complaint").

jurisdictional discovery, and indicating whether he consents to a transfer to the Eastern District of New York. Dkt. 114 at 4. In response, both parties requested limited jurisdictional discovery, Dkts. 117, 119, which the Court granted, Dkts. 118, 120. On October 27, 2025, Plaintiff filed supplemental papers in opposition to Defendants' motion to dismiss for improper venue, Dkts. 125 ("DeCandia Aff."), 126 ("Supp. Opposition"), and Defendants responded on November 4, 2025, Dkt. 129 ("Supp. Motion Br.").

On November 20, 2025, Judge Tarnofsky issued her Report and Recommendation, recommending that the undersigned grant in part and deny in part Defendants' motion. R&R at 36-37. The Report and Recommendation construed Defendants' motions as comprising a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) on two separate grounds—*Colorado River* abstention and compulsory joinder under Rule 19—and a motion to dismiss for improper venue under Rule 12(b)(3). It recommended denying Defendants' motion to dismiss based on abstention. *Id.* at 22-25, 37. Second, it recommended denying the motion to dismiss for lack of subject matter jurisdiction to the extent that Plaintiff seeks direct relief for his breach-of-fiduciary-duty claims, and granting the motion as to the claims that must be bought derivatively. *Id.* at 10-22, 36-37. Third, it recommended denying the motion to dismiss for improper venue, or, alternatively transferring the action to the Eastern District of New York. *Id.* at 25-36.

Defendants timely objected to the Report and Recommendation on December 4, 2025. Dkt. 137. Plaintiff responded on December 18, 2025. Dkt. 138.

## II.  Legal Standard

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a report and recommendation. 28 U.S.C. § 636(b)(1)(C). Within fourteen days after a party has been served with a copy of a magistrate

judge's report and recommendation, the party "may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). If a party submits a timely and otherwise proper objection to any part of the magistrate judge's disposition, the district court will conduct a *de novo* review of the contested section. Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juv.*, 121 F.3d 34, 38 (2d Cir. 1997).

### III.  Discussion

In light of Defendants' objections, the Court reviews the Report and Recommendation *de novo*. For the reasons stated below, the Court adopts the Report and Recommendation in significant part. First, the Court adopts Judge Tarnofsky's recommendation to deny the motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction based on *Colorado River* abstention. Second, the Court adopts the recommendation to allow this action to proceed based on Plaintiff's claims for direct relief. The Court, however, construes the motion in this regard as seeking dismissal under Rule 12(b)(7) for failure to join necessary parties under Rule 19, not for lack of subject matter jurisdiction under Rule 12(b)(1). Third, instead of denying Defendants' motion to dismiss for improper venue under Rule 12(b)(3), the Court holds that motion in abeyance pending an evidentiary hearing on venue before Judge Tarnofsky.

### A.    Abstention

A motion to dismiss based on the *Colorado River* abstention doctrine "is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of [the] Federal Rules of Civil Procedure." *JP Morgan Chase Bank, N.A. v. Avara US Holdings LLC*, No. 23 Civ. 7145 (JGK), 2024 WL 709068, at *4 (S.D.N.Y. Feb. 21, 2024). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.

2000).  The plaintiff must "establish[] by a preponderance of the evidence that subject matter jurisdiction exists" to defeat a Rule 12(b)(1) motion. *Xia v. Bondi*, 137 F.4th 85, 89 (2d Cir. 2025). Thus, in considering a motion to dismiss based on abstention, "the Court generally must accept the material factual allegations in the complaint as true," but it should "not draw all reasonable inferences in the plaintiff's favor." *JP Morgan Chase Bank*, 2024 WL 709068, at *4.  "Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings to determine whether jurisdiction exists." *Id.*

"[F]ederal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River Water Conservation Dist. v. United States* ("*Colorado River*"), 424 U.S. 800, 817 (1976)).  But in an "extraordinary and narrow exception" to that rule, *Colorado River*, 424 U.S. at 813, "a federal court may decline to proceed with a case, which is properly before it, when parallel litigation is pending in a state court." *JP Morgan Chase Bank*, 2024 WL 709068, at *4 (citation modified); *see Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001).  In such a case, "there must be exceptional circumstances, based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *JP Morgan Chase Bank*, 2024 WL 709068, at *4 (citation modified).  Though "the decision whether to abstain on *Colorado River* grounds is committed to the district court's discretion," because "abstention is contrary to a federal court's normal duty to adjudicate a controversy over which it has jurisdiction," the district court has "little or no discretion to abstain in a case which does not meet traditional abstention requirements." *Woodford*, 239 F.3d at 523 (citation modified).

"[T]he existence of a contemporaneous state court action alone is not sufficient for abstention." *Wells Fargo Bank, Nat'l Ass'n v. Patel*, No. 24 Civ. 1162 (KPF), 2025 WL 844161, at \*7 (S.D.N.Y. Mar. 18, 2025).  To decide whether to abstain under *Colorado River*, "a district court must first determine whether the federal and state court cases are parallel." *Id.* (quoting *U.S. Bank Nat'l Ass'n v. E. Fordham DE LLC*, 804 F. App'x 106, 107 (2d Cir. 2020) (summary order)). "Only if the federal and state cases are parallel, do courts consider a six-factor test to determine if abstention is appropriate under *Colorado River*." *United States v. Blake*, 942 F. Supp. 2d 285, 293 (E.D.N.Y. 2013); *see Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) (explaining that parallelism is "a necessary prerequisite to abstention").[4]  "Federal and state proceedings are parallel for purposes of abstention when the two proceedings are 'essentially the same'—when there is an identity of parties, and the issues and relief sought are the same." *Wells Fargo Bank, Nat'l Ass'n*, 2025 WL 844161, at \*7 (quoting *U.S. Bank Nat'l Ass'n*, 804 F. App'x at 107). "Exact identity of parties is not required for cases to be found parallel." *JP Morgan Chase Bank*, 2024 WL 709068, at \*5 (citation modified). "Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) (citation modified) (emphasis in original); *see Woodford*, 239 F.3d at 522 (explaining abstention is proper only where the "concurrent state-court litigation could result in comprehensive disposition of litigation" (citation modified)). "Any

---

[4] The six factors are: "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights." *Woodford*, 239 F.3d at 522 (citation modified).

14

doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction." *Shields*, 891 F. Supp. 2d at 577 (citation modified).

This case presents predominantly different facts and claims from those raised by the New York Action, which alleges breach of contract, promissory estoppel, breach of fiduciary duties, and unjust enrichment with respect to real estate transactions in Miami and Brooklyn, and seeks a declaratory judgment with respect to the Plaintiff's alleged interest in a property in Brooklyn. State Court Complaint ¶¶ 26-60. First, there is only partial identity of parties. The New York Action names Elliot and Rachel as defendants, and an entity called Seventeen Truck LLC, but it does not name Ellemark. *See id.* ¶¶ 2-5. More significantly, the issues and relief sought in the New York Action do not overlap with this case beyond several factual allegations concerning the 2021 Guaranty. *Compare* SAC ¶¶ 121-126, 200-217, *with* State Court Complaint ¶¶ 17-21, 56. Relief in the New York Action would not come close to a "comprehensive disposition of litigation" in this action. *Woodford*, 239 F.3d at 522 (citation modified). The New York Action does not mention, let alone seek relief for, Elliot's alleged conduct as a member and de facto managing member of the Non-Party LLCs and S Miami LLC, which conduct is central to eight of the claims in this action, SAC ¶¶ 130-173, 188-199, 218-223, nor does the New York Action seek relief for Elliot's alleged failure to repay the July 2020 Loan, *id.* ¶¶ 174-187. Thus, the New York Action would not resolve the issues in this action and the cases are not parallel.

Defendants object that the two actions "are based on the same underlying facts" because both involve "the long-standing business relationship between Plaintiff" and Elliot, and "center on" Elliot's alleged failure to repay the 2021 Guaranty and credit Plaintiff's contributions to joint investments. Objections at 12-13. But this overlap is far too narrow to render the actions parallel for the "extraordinary and narrow exception" to federal courts' duty to exercise jurisdiction.

15

*Colorado River*, 424 U.S. at 813.  Neither does it account for the incongruent relief that Plaintiff seeks in each.  Because the Court finds that this action is not in parallel with the New York Action, it need not consider the six *Colorado River* factors.  *See Dittmer*, 146 F.3d at 118 (explaining that parallelism is "a necessary prerequisite to abstention"); *see also Blake*, 942 F. Supp. 2d at 297 (calling this a "threshold determination").

Accordingly, the Court overrules Defendants' objections, adopts Judge Tarnofsky's recommendation, declines to abstain from exercising jurisdiction under *Colorado River*, and denies the motion to dismiss for lack of subject matter jurisdiction.

**B.     Motion for Failure to Join Necessary Parties**

Defendants' next argument for dismissal hinges on whether Federal Rule of Civil Procedure 19 requires joinder of the Non-Party LLCs, which in turn depends on whether Plaintiff seeks direct or derivative relief for Elliot's and Ellemark's conduct as a member and manager, respectively, of the Non-Party LLCs.  The Court construes this as a motion under Rule 12(b)(7) for dismissal for failure to join a necessary party.  *See Baldwin*, 2021 WL 847976, at *1 n.1 (construing a motion brought under Rule 12(b)(6) under Rule 12(b)(7)).  To resolve a Rule 12(b)(7) motion, the district court must, first, "determine whether the [non-]party should be joined as a 'necessary party' under Rule 19(a)."  *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 356 (2d Cir. 2015) (citation modified); *see* Fed. R. Civ. P. 19(a).  If the party is necessary but joinder is infeasible because its presence in the action would destroy complete diversity and, with it, the court's subject matter jurisdiction,[5] "the court consults Rule 19(b), which requires

---

[5] A district court has "original diversity jurisdiction" under 28 U.S.C. § 1332 "only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same state."  *Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 388 (1998) (citation modified).

16

courts to consider whether, in equity and good conscience, the party is one without whom the action between the remaining parties cannot proceed—or, in the traditional terminology, whether the absent party is 'indispensable.'" *Am. Trucking Ass'n*, 795 F.3d at 357 (citation modified) (noting that courts are "extremely reluctant" to grant Rule 12(b)(7) motions, so "dismissal will be ordered only when the defect cannot be cured" (citation modified)); *see* Fed. R. Civ. P. 19(b). "In its analysis, the Court must consider the 'pleadings as they appear at the time of the proposed joinder.'" *Fanbrella, Inc. v. EDT Prods., Inc.*, 185 F.R.D. 144, 147 (E.D.N.Y. 1999) (quoting *Assoc. Dry Goods v. Towers Fin. Corp.*, 920 F.2d 1121, 1123-24 (2d Cir. 1990)).

The parties do not dispute that the Non-Party LLCs' joinder would destroy jurisdiction. *See* Dkts. 30, 31.[6] Neither do they dispute that, at this moment, there is complete diversity and the Court has subject matter jurisdiction. At this stage, Rule 12(b)(7) is the proper vehicle for Defendants' motion to dismiss because the sole issue is whether the Non-Party LLCs have an interest in the action that would make them indispensable parties. As an LLC that is the subject of a derivative claim is an indispensable party under Rule 19(b), the Non-Party LLCs would be indispensable parties in this action if Plaintiff seeks derivative relief. *See, e.g.*, *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 650 (S.D.N.Y. 2008) (explaining that an LLC "has an obvious interest in the derivative claims raised on its behalf"); *Weber v. King*, 110 F. Supp. 2d 124, 133 (E.D.N.Y. 2000) (collecting cases).

---

[6] Because the "citizenship of a limited liability company is determined by the citizenship of each of its members," *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016), and both Plaintiff and Elliot are members of the Non-Party LLCs, regardless of how the Non-Party LLCs would be aligned in this action, their presence would necessarily destroy complete diversity.

For the reasons explained below, Plaintiff seeks relief only for the harms to him individually, and has disclaimed any derivative relief, so the Non-Party LLCs are not indispensable parties under Rule 19(b).  That means this action may proceed without them.

Whether the Non-Party LLCs have an interest in this action is a matter of state law.  *See Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 125 n.22 (1968) (explaining that joinder is a question of federal law in a diversity case, but "state-law questions may arise in determining what interest the outsider actually has").  Each LLC's state of incorporation provides the relevant law.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 117, 122 (2d Cir. 2022) (applying Delaware law to assess whether a shareholder suit concerning a Delaware corporation was direct or derivative).  Under Delaware's two-part test to distinguish direct and derivative claims of breach of fiduciary duty, a court must consider: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"  *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033, 1035-36 (Del. 2004); *see Miller*, 43 F.4th at 122-23 (applying Delaware law).  A direct claim under *Tooley* alleges that "the duty breached was owed to the [plaintiff] and that he or she can prevail without showing an injury to the corporation."  *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1266 (Del. 2021) (quoting *Tooley*, 845 A.2d at 1039).

Florida law uses a similar two-prong test.  Under Florida law, an LLC member may bring a direct action only if (1) he suffered a "direct harm . . . such that the alleged injury does not flow subsequently from an initial harm to the company," and (2) he suffers a "special injury."  *Dinuro Invs., LLC v. Camacho*, 141 So. 3d 731, 739-40 (Fla. Dist. Ct. App. 2014); *see DiSorbo v. Am. Van Lines, Inc.*, 354 So. 3d 530, 542-43 (Fla. Dist. Ct. App. 2023) (stating that an LLC member

18

bringing a direct action "must plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company" (quoting Fla. Stat. Ann. § 605.0801(2)(a)).  The same court that decided *Dinuro* later clarified that the "special injury" must be "separate and distinct from any injury suffered by the corporation." *Arbitrage Fund v. Petty*, 307 So. 3d 119, 126 (Fla. Dist. Ct. App. 2020) (citation modified); *see Fratelli BVBA v. APM Music Servs., LLC*, No. 20 Civ. 6208 (JPC), 2021 WL 4429417, at *9 (S.D.N.Y. Sept. 27, 2021) (explaining that a member of a Florida LLC is liable both to other members and to the LLC for breach of fiduciary duties if he "failed to perform his duties in '[a] transaction from which the manager or member derived an improper personal benefit, directly or indirectly'" (quoting Fla. Stat. Ann. § 605.04093(1)(b)(2))).

Count I pleads breach of fiduciary duties by Elliot and Ellemark based on factual allegations of breaches that injured Plaintiff directly and others that harmed the Non-Party LLCs. Plaintiff, however, has specifically disclaimed any claim to derivative relief.  *See* Opposition at 8 (representing that Plaintiff "is not seeking" any relief "that the Court concludes . . . Plaintiff is not individually entitled to"); Feb. 12, 2024 Letter at 2 ("This is not a derivative suit where the [Non-Party LLCs] would be necessary parties to this lawsuit.").  The Court below discusses the direct claims that Plaintiff brings, and further identifies any remaining derivative claims and dismisses those without prejudice.

Starting with the Delaware LLCs and Plaintiff's claims for direct relief, Plaintiff first alleges that Elliot understated Plaintiff's membership in the records of 169-171 LLC and that "he had collected a substantial portion of Plaintiff's investment in [169-171 LLC] through Ellemark in order to [show he was the majority owner of 169-171 LLC]."  SAC ¶¶ 25-27; *see id.* ¶ 135(i). Second, Plaintiff alleges that he was misled into paying more than his share of some of the LLCs'

19

obligations. *Id.* ¶¶ 33-34 (169-171 LLC), 87-91 (Downtown NS LLC); *see id.* ¶¶ 135(vi), 138(v).

Third, Plaintiff alleges that Elliot denied him access to the LLCs' books and records, which he is

entitled as a member to review. *Id.* ¶¶ 37-39 (169-171 LLC), 54-56 (262 LLC), 69-71 (Downtown

BH LLC); *see id.* ¶¶ 188-194.  As alleged, each of these breaches directly harmed Plaintiff and did

not affect the LLCs, and Plaintiff's recovery would be independent of any recovery by the LLCs.

Accordingly they are direct claims and do not require the Delaware LLCs' joinder.  *See Tooley*,

845 A.2d at 1038-39; *see also Riker v. Teucrium Trading, LLC*, C.A. No. 2019-0314-AGB, 2020

WL 2393340, at *4 (Del. Ch. May 12, 2020) (explaining that members of Delaware LLCs have a

right to review records).

Plaintiff's allegations that Elliot and Ellemark diverted distributions that should have gone

to him are also direct claims.  For instance, he alleges that Elliot, as a member and the de facto

managing member of each Delaware LLC, SAC ¶¶ 131-132, and Ellemark, as a manager providing

services to each Delaware LLC, *id.* ¶ 133:

- "improperly claimed . . . benefits" for Elliot, such as distributions and losses, associated with Plaintiff's membership interest in 169-171 LLC, 262 LLC, Downtown BH LLC, and Downtown NS LLC, and which "properly belonged to Plaintiff" or otherwise should have been received by Plaintiff, *id.* ¶ 66(i); *see id.* ¶¶ 22(ii), 49(ii), 81(i), 135(ii), 136(i), 137(i), 138(i);

- "improperly paid money . . . that should have been distributed to Plaintiff" from 169-171 LLC, 262 LLC, Downtown BH LLC, and Downtown NS LLC to Elliot and Rachel or entities in which they own an interest, *id.* ¶ 22(iii); *see id.* ¶¶ 49(iii), 66(ii), 81(iii), 135(iii), 136(ii), 137(ii), 138(ii);

20

- "improperly paid money . . . that should have been distributed to Plaintiff" from 169-171 LLC, 262 LLC, Downtown BH LLC, and Downtown NS LLC to Ellemark, *id.* ¶ 22(iv); *see id.* ¶¶ 135(iv), 136(iii), 137(iv), 138(iii);

- "improperly distributed a portion of loan proceeds related to real property that had been owned by" 169-171 LLC, Downtown BH LLC, and Downtown NS LLC to Elliot and Rachel or entities in which they owned an interest "that should have been distributed to Plaintiff," *id.* ¶ 22(v); *see id.* ¶¶ 66(iv), 81(iv), 135(v), 137(v), 138(iv); and

- "improperly distributed" portions of proceeds from sales of real property by 169-171 LLC and 262 LLC to Elliot and Rachel or entities in which they possessed an interest even though those portions "should have been distributed to Plaintiff," *id.* ¶ 49(v); *see id.* ¶¶ 35, 136(iv).

Assuming the truth of these allegations and drawing all reasonable inferences in Plaintiff's favor, these claims allege that Elliot and Ellemark diverted funds to Elliot, Rachel, and Ellemark at Plaintiff's expense. As alleged, by the time of the diversion, these funds were owed to the Plaintiff, not the Delaware LLCs, and they would have gone to him had Elliot and Ellemark not diverted them to himself, Rachel, or entities that they owned. At this stage, and in the absence of an operating agreement or allegations of the terms governing distributions from the LLCs, the Court must accept as true these allegations that Plaintiff was entitled to these distributions. Therefore, Plaintiff, not the Delaware LLCs, "suffered the alleged harm" caused by those diversions and Plaintiff alone "would receive the benefit of any recovery." *Tooley*, 845 A.2d at 1033. Thus, Plaintiff has pleaded a direct claim under *Tooley* with respect to the diverted distributions. *See Brookfield Asset Mgmt.*, 261 A.3d at 1266 (explaining that a direct claim under

*Tooley* alleges that "the duty breached was owed to the [plaintiff] and that he or she can prevail without showing an injury to the corporation" (quoting *Tooley*, 845 A.2d at 1039)).[7]

By contrast, allegations of harms arising out of general mismanagement and resulting from misappropriation of the Delaware LLCs' funds are derivative and must be dismissed.  *See In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig.*, No. 20 Civ. 5615 (KPF), 2021 WL 4481215, at *19 (S.D.N.Y. Sept. 30, 2021) (allowing direct claims to survive even while dismissing claims "sound[ing] in mismanagement" because "Delaware law is clear that fiduciary duty claims alleging fund mismanagement are derivative" (citation modified)).  Judge Tarnofsky identified them in her Report and Recommendation.  *See* R&R at 16.  They are that:

- Elliot and Ellemark "fail[ed] to maintain Downtown BH LLC's legal status which resulted in its business registration being suspended," SAC ¶ 137(vii);

- Elliot and Ellemark "improperly receive[d] commissions and finders fees . . . in connection with transactions related to properties owned by the Companies, including sales and loans," *id.* ¶ 141; *see id.* ¶¶ 30, 49(vi), 53, 66(v), 81(v), 83, 135(vii), 136(v), 137(vi), 138(vi), 142, 144;

---

[7] The Report and Recommendation added, "to the extent that Defendants were obligated to keep Plaintiff informed and to secure his consent to the business decisions of the LLCs, hiring a managing agent [(*i.e.*, Ellemark)] without telling Plaintiff that the company was owned by [Elliot], selling property without Plaintiff's consent, paying [Elliot] an unauthorized referral fee for a company-related mortgage, and refusing to provide Plaintiff with information about the companies also damage Plaintiff as an individual owner of the companies without necessarily harming the LLCs."  R&R at 13.  The Court agrees except with respect to Elliot's receipt of unauthorized referral fees, which constitutes a derivative claim, *see* SAC ¶¶ 22(vi), 30, 49(vi), 66(v), 81(v), 135(vii), 136(v), 137(vi), 138(vi), given that Plaintiff does not allege any arrangement by which the fees may have gone to him.  *See Tooley*, 845 A.2d at 1039 ("The stockholder's claimed direct injury must be independent of any alleged injury to the corporation.").  Indeed, the Report and Recommendation properly counted that allegation among the derivative claims it listed later on.  *See* R&R at 16-17.

- Elliot arranged for 169-171 LLC to secure an "above-market" mortgage, *id.* ¶ 29, and "through Ellemark caused Downtown NS LLC to enter into at least three above-market[] loans," *id.* ¶ 82;

- 169-171 LLC "was unable to pay its debts" between 2021 and 2023, *id.* ¶ 31;

- Elliot personally and/or through Ellemark "improperly paid money from" 262 LLC, Downtown BH LLC, and Downtown NS LLC "to Ellemark," *id.* ¶ 49(iv); *see id.* ¶¶ 66(iii), 81(iii);

- Elliot and Ellemark "t[ook] unauthorized disbursements from Downtown BH LLC," *id.* ¶ 219(iv);

- "Downtown NS LLC's losses substantially increased from approximately $140,000 in 2018 to approximately $1,000,000 in 2021 as the income being earned was substantially less than the entity's expenses," *id.* ¶ 86; and

- Elliot and Ellemark assigned "Downtown NS LLC's right to receive rents from tenants . . . to a lender in January 2022," placed "a lien . . . on Downtown NS[] LLC's property in 2022," and failed to maintain Downtown NS LLC's property, leading to issuance of "Unsafe Structure Orders . . . in March 2022 and June 2023," *id.* ¶ 93.

As Judge Tarnofsky concluded, these claims allege breaches of fiduciary duty that "arise out of 'the normal duty to manage the affairs of the corporation,' which 'is owed to the corporation and not separately or independently to the stockholders.'" R&R at 17 (quoting *Debussy LLC v. Deutsche Bank AG*, No. 05 Civ. 5550 (SHS), 2006 WL 800956, at *3 (S.D.N.Y. Mar. 29, 2006)); *see Katz v. Halperin*, No. 13811, 1996 WL 66006, at *5 (Del. Ch. Feb. 5, 1996) ("[A] claim of

mismanagement resulting in corporate waste is derivative in nature, not individual."). The Court dismisses these derivative allegations without prejudice.

In addition to the derivative claims identified by Judge Tarnofsky, the Court is inclined to find that the following claim also seeks derivative relief, and orders Plaintiff to show cause within two weeks whether he pursues it and, if so, why it should not be dismissed as derivative: that Elliot's and Ellemark's breaches of their duties of care caused Downtown BH LLC's losses to increase from $2,000 in 2016 to $200,000 in 2021, SAC ¶ 67.

With respect to the Florida LLCs, Plaintiff again pleads facts that could support both direct and derivative claims. Starting with the direct claims, Plaintiff alleges that Elliot caused: "[SOMI LLC] to make payments from the assets of [S Miami LLC] to [Elliot and Rachel] and/or entities in which they possessed [an interest] that should have been distributed to Plaintiff," *id.* ¶ 139(i); "[S Miami LLC] to make payments from [its] assets . . . to [Elliot and Rachel] and/or entities in which they possessed [an interest] that should have been distributed to Plaintiff," *id.* ¶ 139(ii); and "[SOMI LLC] to make payments from [its] assets . . . to [Elliot and Rachel] and/or entities in which they possessed [an interest] that should have been distributed to Plaintiff," *id.* ¶ 139(iii).[8] As with the Delaware LLCs, these allegations permit the reasonable inference that these are direct claims because Plaintiff, not either Florida LLC, "should have" received these distributions had Elliot not diverted them. Consequently, Plaintiff was entitled to these distributions and he, not the Florida LLCs, was injured by Elliot's alleged breach of fiduciary duty. Plaintiff thus suffered a

---

[8] Plaintiff's allegation that Elliot denied him access to SOMI LLC's books and records, which he is entitled as a member to review, is also a direct claim. SAC ¶¶ 115-117; *see* Fla. Stat. Ann. § 605.0410. Though Plaintiff also alleges that he demanded S Miami LLC's books and records, SAC ¶¶ 118-120, his Accounting cause of action (Count VIII) does not seek relief with respect to S Miami LLC, so the Court does not consider those allegations here. *See id.* ¶¶ 188-194 (seeking to be "provide[d] a complete set of the Companies' financial books"), 131 (excluding S Miami LLC from the definition of the "Companies").

"direct harm" unconnected to any "initial harm to the company," *Dinuro Invs.*, 141 So. 3d at 739-40, and thus incurred a "special injury" that is "separate and distinct from any injury suffered by the corporation," *Arbitrage Fund*, 307 So. 3d at 126 (citation modified). Plaintiff may bring these claims directly.

By contrast, as Judge Tarnofsky concluded, Plaintiff's derivative claims that must be dismissed are: (i) that Elliot caused SOMI LLC and S Miami LLC to make distributions to Elliot and Rachel, or entities belonging to them, SAC ¶¶ 112-113, and (ii) that Elliot's "mismanagement of [SOMI LLC] and [S Miami LLC]" caused S Miami LLC to incur "substantial losses . . . from 2017 to 2021," *id.* ¶ 114.[9] *See* R&R at 20. These allegations do not plead individual harms to Plaintiff. By allegedly paying himself and Rachel from the assets of SOMI LLC and S Miami LLC, Elliot harmed those entities, which only derivatively harmed the entities' members or other investors, such as Plaintiff. So to whatever extent Plaintiff suffered an injury, it "flow[ed] subsequently from an initial harm to the [LLC]," and is therefore derivative. *Dinuro Invs.*, 141 So. 3d at 739-40; *see DiSorbo*, 354 So. 3d at 542 (explaining that a plaintiff cannot bring a direct action if his injury is "solely the result of an injury suffered or threatened to be suffered by the limited liability company" (quoting Fla. Stat. Ann. § 605.0801(2)(a)). Accordingly, the Court dismisses these two claims without prejudice.

Defendants raise five arguments in objecting to Judge Tarnofsky's conclusion that this action should proceed with Plaintiff's direct claims. *See* Objections at 13-17. None is persuasive. First, Defendants deny that any of the claims is direct and argue that Plaintiff's allegation that certain funds "should have been distributed to Plaintiff" is "formulaic," and his claims really are

___

[9] This would be a derivative claim because Plaintiff is a member of SOMI LLC, which is in turn a member of S Miami LLC. SAC ¶¶ 100, 102. S Miami LLC's losses could reduce the value of SOMI LLC, which would give rise to a derivative claim.

"paradigmatic derivative injuries" because their basis is alleged mismanagement of LLC funds. *Id.* at 14 (as to the Delaware LLCs); *see id.* at 15-16 (as to the Florida LLCs).  Second, Defendants invoke the proposition that the "two-member nature of many of the LLCs does not transform derivative harm into direct harm." *Id.* at 14-15 (citing *Clifford Paper, Inc. v. WPP Investors, LLC*, No. CV 2020-0448-JRS, 2021 WL 2211694 (Del. Ch. June 1, 2021)).  Third, Defendants argue that under Florida law, mismanagement and diversion of LLC funds resulting in capital losses are derivative, not direct, harms, citing *Silver Crown Investments, LLC v. Team Real Estates Management, LLC*, 349 F. Supp. 3d 1316 (S.D. Fla. 2018), and, fourth, that the Report and Recommendation was mistaken to rely on this Court's decision in *Fratelli BVBA*, 2021 WL 4429417.  Objections at 15-16.  Lastly, Defendants claim that the direct and derivative claims are so intertwined that the Non-Party LLCs' interests are implicated by this action even if only the direct claims survive.  *Id.* at 16-17.

The Court takes each in turn.  First, because the Court must at this stage accept Plaintiff's factual allegations as true, Plaintiff's pleading that Elliot and Ellemark interfered with his rightful receipt of certain funds from the Non-Party LLCs is sufficient to allege direct harm notwithstanding his "formulaic" phrasing.  Plaintiff's repetitious language does not discount the sufficiency of his pleadings, especially in light of other allegations which do not assert an individual entitlement to funds, and as a result, are dismissed as seeking derivative relief.  *See supra*.  Second, that some of the Non-Party LLCs have only two members is irrelevant to the analysis.[10]

---

[10] This is consistent with *Clifford Paper*, which held that *Tooley*'s two-part test applies to two-member LLCs, 2021 WL 2211694, at *7, and concluded that the fiduciary duty claims were derivative because the injury flowed directly to the LLC, and only then to the plaintiff, *id.* at *11.

26

Third, *Silver Crown Investments* and *Fratelli* are consistent with the Report and Recommendation's conclusions. In *Silver Crown*, the plaintiffs alleged that they suffered "capital losses" due to mismanagement, waste, or diversion "in amounts equal to their rightful ownership of the company, loss of use of investment income, and loss of promised profits." 349 F. Supp. 3d at 1326 (citation modified). Those injuries gave rise to derivative claims under Florida law, as the plaintiff failed to allege a direct injury and instead relied on the harm that flowed from the LLC's lost value. *Id.* at 1326-27. By contrast, here Plaintiff alleges that Elliot diverted funds that the LLC had no claim to and which were owed to Plaintiff. As alleged, though those funds originated in SOMI LLC and S Miami LLC, those entities were not entitled to them, so they were not injured by their diversion and would have no basis to recover for it. *Fratelli* is similarly on point. There, this Court found that the cross-claimant brought a direct suit under Florida law when alleging that the cross-claim defendant pocketed funds that an LLC owed the cross-claimant. *See Fratelli BVBA*, 2021 WL 4429417, at *9 ("Stone suffered a unique injury when Keizer allegedly diverted over $25,000 that should have gone to Stone."). Though Defendants claim that this finding was based on the "separate obligation" the cross-claim defendant owed under a contract, Objections at 16, that was just one of two grounds for the Court's conclusion that the cross-claimant had adequately alleged a right to direct relief. *See Fratelli BVBA*, 2021 WL 4429417, at *9.

Lastly, Defendants are incorrect that the Court must toss out the whole action because Count I alleges facts that would support both derivative and direct relief. *See Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 610 (S.D.N.Y. 2010) (explaining that "there is no reason that some claims arising out of a case or controversy could not be direct while other claims arising out of that case or controversy are properly derivative"). Simply because Plaintiff pleads factual allegations that could be grounds for derivative relief does not turn his claim into a derivative one that would

27

require the Non-Party LLCs' presence—especially when Plaintiff has disclaimed seeking any derivative claims. *See In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig.*, 2021 WL 4481215, at \*19 (allowing direct claims to survive even while dismissing derivative claims); *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005) ("In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder of necessary parties." (citation modified)).

\* \* \*

Because Plaintiff alleges direct claims under Delaware and Florida law and does not press any derivative claims, the Non-Party LLCs are not indispensable parties under Rule 19. In the absence of any other reason raised by Defendants for their joinder, the Court concludes that this action can proceed without the Non-Party LLCs. In light of Plaintiff's representation that he does not seek derivative relief, *see* Opposition at 8; Feb. 12, 2024 Letter at 2, the Court dismisses without prejudice his derivative claims arising out of paragraphs 22(vi), 29-31, 49(iv), 49(vi), 53, 66(iii), 66(v), 81(iii), 81(v), 82-83, 86, 93, 112-114, 135(vii), 136(v), 137(vi)-(vii), 138(vi), 141-142, 144, and 219(iv) of the Second Amended Complaint. Plaintiff also is ordered to show cause within fourteen days of this Opinion and Order whether he seeks to pursue the claim arising out of paragraph 67 and, if so, why that claim too should not be treated as a derivative claim and dismissed.

Similarly, though Defendants did not raise Count IX in their briefing, the Court notes that this claim against Elliot and Ellemark for "misappropriation of funds of Downtown BH LLC" appears to sound in a derivative claim. *See* SAC ¶¶ 195-199. Accordingly, Plaintiff also shall show cause within fourteen days of this Opinion and Order whether he pursues this claim and, if so, why it should not be treated as a derivative claim and dismissed. *See Merrill Lynch & Co. Inc.*

28

*v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007) (explaining that a "failure of diversity . . . eliminates every claim in the action"); *see also Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987) ("As an alternative to dismissal [under Rule 19(b)], a court should take a flexible approach when deciding what parties need to be present for a just resolution of the suit.").

## C.     Venue

Defendants object to the recommendation that the Court deny their motion to dismiss for improper venue.  Objections at 5-9; *see* R&R at 35.  The Court respectfully departs from that recommendation and holds this motion in abeyance pending an evidentiary hearing.

A motion to dismiss under Rule 12(b)(3) asserts that venue is "improper."  Fed. R. Civ. P. 12(b)(3).  "Once an objection to venue has been raised, plaintiff bears the burden of proving that venue is proper."  *Catlin Indem. Co. v. New England Law/Boston*, No. 15 Civ. 4836 (JMF), 2016 WL 447849, at *2 (S.D.N.Y. Feb. 4, 2016) (citation modified).  In assessing venue under Rule 12(b)(3), courts in this Circuit apply the same standard of review as for a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).  *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).  A court reviewing a motion under either rule has "considerable procedural leeway," which includes "permit[ting] discovery in aid of the motion" or conducting "an evidentiary hearing on the merits of the motion."  *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see Shepherd v. Annucci*, 921 F.3d 89, 95 (2d Cir. 2019) (explaining this "procedural leeway" exists for both types of motions); *see also Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 288 (E.D.N.Y. 2013) (deeming an evidentiary hearing necessary before ruling on a Rule 12(b)(3) motion).  At an evidentiary hearing, the plaintiff bears

the burden of proving by a preponderance of the evidence that venue is proper. *Dorchester Fin. Secs.*, 722 F.3d at 86-87.

"Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). In the absence of a more specific statute regarding venue, whether venue is "wrong" or "improper" for a federal civil action is governed by 28 U.S.C. § 1391. *Id.* Under Section 1391, venue is proper in the chosen forum if: (1) at least one defendant resides in the District and all the defendants reside in the same state in which the District is located, 28 U.S.C. § 1391(b)(1); (2) a "substantial part" of the events giving rise to the claim occurred in the District, *id.* § 1391(b)(2); or (3) a defendant is subject to personal jurisdiction in the District and "there is no [D]istrict in which an action may otherwise be brought," *id.* § 1391(b)(3). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper" and such case "may not be dismissed under [28 U.S.C.] § 1406(a) or Rule 12(b)(3)." *Atl. Marine Constr. Co.*, 571 U.S. at 56.

The parties dispute whether Ellemark resides in this District for purposes of Section 1391(b)(1), *see* Motion Br. at 14-15; Opposition at 10-11, and whether Elliot's conduct within this District on behalf of himself and Ellemark constitutes "a substantial part of the events or omissions giving rise to the claim" under Section 1391(b)(2), *see* Supp. Motion Br. at 3-9; Supp. Opposition at 2-7. On the question of venue under Section 1391(b)(1), Plaintiff avers, for example, that Ellemark maintained offices in Manhattan, Dkt. 124 ("Pl. Decl.") ¶¶ 8-9; *see, e.g.*, DeCandia Aff., Exh. F (bank statement for 169-171 LLC showing "C/O" Ellemark at a Manhattan address), while Defendants have put forward evidence that Ellemark's "regular business address" was in

Brooklyn, and that the Manhattan addresses were simply "virtual office[s] . . . mainly used to forward[] mail related to the properties located in Manhattan and for scanning and copying services," Supp. Motion Br., Exh. A ("Elliot Decl.") ¶¶ 3-4.  On the question of venue under Section 1391(b)(2), Plaintiff states, for instance, that he and Elliot met many times in Manhattan to discuss Plaintiff's investments in Elliot's businesses, Pl. Decl. ¶ 7, that they together visited the Manhattan properties owned by 169-171 LLC and 262 LLC in approximately 2018 and 2019, *id.* ¶¶ 3-5, and that Plaintiff made at least two cash payments to Elliot in Manhattan in addition to wiring large sums to Manhattan-based bank accounts maintained by Elliot and/or Ellemark on behalf of 169-171 LLC and 262 LLC, *id.* ¶¶ 9-10.  Elliot, however, insists that he made "all substantial business decisions" and maintained "[r]ecords of contributions, investments, and loans related to all entities" named in the Second Amended Complaint in his home office in Brooklyn, Elliot Decl. ¶¶ 5-6.

In light of the disputed facts relevant to the venue determination in this case, and in the interest of judicial efficiency, the Court declines to resolve the pending Rule 12(b)(3) motion before holding an evidentiary hearing. *See Allied Dynamics*, 965 F. Supp. 3d at 298-300.  Plaintiff is reminded that it must prove that venue is proper for each claim and each Defendant. *See Forstl v. Morgan Creek Cap. Mgmt., LLC*, No. 24 Civ. 5691 (JPC), 2025 WL 2781348, at *8 (S.D.N.Y. Sept. 30, 2025) (citation modified).  Should Plaintiff fail to carry his burden as to any of his claims, the Court may dismiss the claims for which venue is improper or *sua sponte* transfer the action to a District where venue is proper.  Given Judge Tarnofsky's familiarity with the facts and procedural history of this case, the Court will enter an order further referring this action for an evidentiary hearing as to venue and for proposed findings of fact and a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). *See* Fed. R. Civ. P. 72(b)(1).

## IV.  Conclusion

For the foregoing reasons, the Court overrules Defendants' objections as to their motions pursuant to Rule 12(b)(1) and Rule 12(b)(7) and adopts the Report and Recommendation with modifications.  The Court denies the motion to dismiss for lack of subject matter jurisdiction and the motion to dismiss for failure to join a necessary party.  The Court dismisses Plaintiffs' allegations that seek derivative relief arising out of paragraphs 22(vi), 29-31, 49(iv), 49(vi), 53, 66(iii), 66(v), 81(iii), 81(v), 82-83, 86, 93, 112-114, 135(vii), 136(v), 137(vi)-(vii), 138(vi), 141-142, 144, and 219(iv) of the Second Amended Complaint.  The Court holds in abeyance Defendants' motion to dismiss for improper venue pending an evidentiary hearing.  The Court will further refer this action to Judge Tarnofsky to hold an evidentiary hearing, unless the parties consent to a transfer of venue before then, and to propose findings of fact and recommend a disposition of the motion.

Within fourteen days of this Opinion and Order, Plaintiff shall show cause whether he pursues the following claims, and if so, why they seek direct relief: (i) that Elliot and Ellemark's breaches of their duties of care caused Downtown BH LLC's losses to increase from $2,000 in 2016 to $200,000 in 2021, SAC ¶ 67, and (ii) Count IX of the Second Amended Complaint.

The Clerk of Court is respectfully directed to close Docket Number 100.

SO ORDERED.

Dated: March 31, 2026
       New York, New York

_____
JOHN P. CRONAN
United States District Judge