# EXHIBIT A

Case 1:26-cv-02647-NRM-JRC   Document 190-1   Filed 06/22/26   Page 2 of 64 PageID
Case 1:24-cv-00520-JPC   Document 43   Filed 04/25/24   Page 1 of 61
#: 90

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELY EDDI,<br><br>        Plaintiff,<br><br>v.<br><br>ELLIOT ANTEBI, RACHEL ANTEBI F/K/A SUTTON, AND ELLEMARK MANAGEMENT LLC,<br>        Defendants. | Civil Action No: 1:24-cv-00520-JPC<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ely Eddi ("**Plaintiff**"), by and through his counsel Offit Kurman, P.A., for its complaint against Defendants Elliot Antebi, Rachel Antebi f/k/a Sutton, Ellemark Management LLC, an Ohio limited liability company (each a "**Defendant**" and collectively "**Defendants**") alleging fraud, fraudulent inducement, breach of fiduciary duty, breach of contract, breach of the covenant of good faith, to compel accountings, and unjust enrichment, states as follows:

## NATURE OF ACTION

1.      This action arises from Defendant Elliot Antebi's misrepresentations, mismanagement, and unfair treatment (both individually and through his company, Ellemark Management LLC) of Plaintiff, during joint ventures and other business activities, as well as the breaches of agreements and promises made by Elliot Antebi and Rachel Antebi f/k/a Sutton to repay certain loans and other indebtedness which Plaintiff tendered and/or collateralized.

## THE PARTIES

2.      Plaintiff Ely Eddi is an individual domiciled in the State of Florida.

3.      Defendants Elliot Antebi and Rachel Antebi f/k/a Sutton (the "**Individual Defendants**") are married individuals domiciled in the State of New York.

4.      Upon information and belief, Defendant Ellemark Management LLC

("Ellemark") is an Ohio limited liability company solely owned and operated by Elliot Antebi (a citizen of New York); See, *Shoregate Towers Partners L.L.C. v. Antebi et al,, 2021 WL 3416980, *3* (Ohio. Ct. App. Aug. 5, 2021) ("Ellemark was Elliott's property management company."). Ellemark currently maintains an office in New York at 200 Park Avenue, Suite 1700, New York, NY, and formerly at the Helmsley building at 230 Park Avenue. Ellemark also maintains a bank account in Melville, New York, into which Plaintiff sent funds in connection with 262 BH LLC and 169-171 BH LLC, each of which own property in New York City (at 169-171 1st Avenue, and 262 Mott Street, respectively). The press has noted Ellemark's role in the acquisition of 169-171 BH LLC's only asset (at 169-171 1st Avenue, New York, NY) in 2019. (See https://www.pincusco.com/elliot-antebis-ellemark-management-pays-14m-to-semmes-brightmans-mib-real-estate-enterprises-for-residential-property-in-east-village/.)

### JURISDICTION AND VENUE

5.   Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(a) because Plaintiff is not a citizen of the same state as any Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.   Personal jurisdiction is proper in this Court with respect to Defendants because the Individual Defendants reside in New York, from which they managed the affairs of Ellemark and the companies set forth below: 169-171 BH LLC, 262 BH LLC, Downtown BH LLC, Downtown NS LLC, S Miami Retail BH LLC, and SOMI Retail BH LLC (collectively the "Companies") and took those other actions specified herein which form the basis for Plaintiff's claims of relief. Ellemark maintains an office in New York at 200 Park Avenue, Suite 1700, New York, NY, and formerly at the Helmsley building at 230 Park Avenue, New York. All Defendants substantial acts in this District, including but not limited to managing assets at 169-171 1st Avenue,

2

and 262 Mott Street, New York, NY and conducting business transactions regularly in this District.

7.        Venue is proper in this District, pursuant 28 U.S.C. §1391(b)(2), because part of the events or omissions giving rising to the claims occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### I.    THE COMPANIES

#### A. 169-171 BH LLC

##### i.    Formation, Ownership, and Management

8.        Upon information and belief, non-party 169-171 BH LLC, is a Delaware limited liability company formed in the State of Delaware and governed by Delaware's Limited Liability Act (the "**Delaware Act**"), 6 *Del. C.* § 18-101 *et seq*.

9.        169-171 BH LLC is not governed by a written operating agreement.

10.       Pursuant to the Delaware Act, absent an operating agreement, the management of the company is vested in its members, unless a manager is appointed by vote or in writing, <u>see</u>, 6 *Del. C.* § 18-402, or unless the authority to take a particular action is delegated. <u>See</u>, 6 *Del. C.* § 18-407.

11.       Plaintiff and Elliot Antebi and Rachel Antebi f/k/a Sutton are its only members.

12.       169-171 BH LLC was formed in 2019.

13.       Elliot Antebi engaged defendant Ellemark without authorization to manage the assets belonging to 169-171 BH LLC. This is evidenced by, among other things, the mortgage note which was recorded on October 6, 2023 addressed to Ellenmark [sic] Management LLC related to 169-171 BH LLC's real property:

3

PAt

**MORTGAGOR/BORROWER:**
169-171 BH LLC
C/O ELLENMARK MANAGEMENT LLC, 200 PARK
AVENUE, SUITE 1700
NEW YORK, NY 10166

14.     Upon information and belief, 169-171 BH LLC does not maintain any written or other agreement with Ellemark authorizing it to manage any of its assets or affairs.

15.     Despite the complete absence of any action by the members of 169-171 BH LLC appointing Elliot Antebi as Managing Member or delegating relevant authority to him under the Delaware Act, Mr. Antebi has unlawfully exercised control over 169-171 BH LLC.

16.     No meeting was held, and no vote was taken, in connection with the appointment of any manager or managing member, or the delegation to Elliot Antebi of any power or right to act which would comport with the Delaware Act. See, 6 *Del. C.* § 18-407.

17.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to engage Ellemark (a company controlled by Elliot Antebi) to act as property manager for 169-171 BH LLC.

18.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to hypothecate any asset of 169-171 BH LLC.

19.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to lien any asset of 169-171 BH LLC.

20.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to pledge any asset of 169-171 BH LLC.

21.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to enter into any contract on behalf of 169-171 BH LLC.

4

22.    No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to sell, transfer, or otherwise dispose of any asset of 169-171 BH LLC.

23.    No company formalities were observed by Elliot Antebi in connection with his de facto management of 169-171 BH LLC.

24.    Notwithstanding the foregoing, Elliot Antebi (and his wife Rachel Antebi f/k/a Sutton since 2021 when she was added without documentation as a member of the company) has been making all of the decisions for 169-171 BH LLC  without disclosure to, regard for, or consent from Plaintiff.

25.    In doing so, Elliot Antebi and Rachel Antebi f/k/a Sutton engaged in self-dealing and, without utilizing proper business judgment, substantially mismanaged and damaged Plaintiff as a member of 169-171 BH LLC.

ii.    **Misreporting Contributions and Percentage Interests on Tax Returns and K-1s**

26.    Mr. Antebi directed Plaintiff to make only part of his capital contributions directly to 169-171 BH LLC. For the great majority of the initial capital contributions, Mr. Antebi instructed plaintiff to remit said capital contributions to 169-171 BH LLC through his company Ellemark.

27.    At that time (and until approximately March 2023 (around Purim), when 169-171 BH LLC accountants contacted Plaintiff to advise that Mr. Antebi had requested that they restate all of the previous K-1s issued by 169-171 BH LLC), Plaintiff was unaware of the reasons that Mr. Antebi had so directed the funds to be collected.

28.    At Mr. Antebi's direction, and relying on his representations Plaintiff made the following capital contributions towards 169-171 BH LLC into Ellemark's Capital One Account

5

(ending in 3603): (A) $1,870,000 on November 22, 2019, and (B) $50,000 on November 25, 2019.

29.     At Mr. Antebi's direction, Plaintiff also made the following capital contributions towards 169-171 BH LLC into Elliot Antebi's Wells Fargo account: (A) $100,000 between October 24-25, 2019, and (B) $50,000.00 on November 20, 2019.

30.     In order to induce Plaintiff to make the above-mentioned capital contributions, at the time that he formed the entity in 2019, Elliot Antebi represented to Plaintiff that Plaintiff's contribution would secure a 70% interest in 169-171 BH LLC.

31.     Elliot Antebi inaccurately reported Plaintiff's percentage ownership interest to 169-171 BH LLC's accountants, which was only discovered by Plaintiff in or about March 2023.

32.     Demands for accountings were made by Plaintiff at various points in 2022 and 2023 by phone and in person, including but not limited to on April 1, 2023.

33.     On April 1, 2023, Elliot Antebi advised by email that his "accountant has all numbers and should be able to share with you re 169-171 very very [sic] shortly."

34.     The K-1s for 2019 for 169-171 BH LLC show that Elliot Antebi is both a 30% owner and a 70% owner, and Mr. Eddi is not listed as an owner.

35.     The K-1s for 2020 for 169-171 BH LLC list Mr. Eddi as a 30% owner of 169-171 BH LLC; and lists the contributions attributable to Mr. Eddi as $862,049, while listing Mr. Antebi's capital contributions as $2,011,448.00.

36.     Plaintiff learned for the first time in or about March 2023 that contrary to Mr. Antebi's repeated representations, Mr. Eddi was not the owner of 70% of this company according to the K-1s but rather is identified as a 30% percent owner and that, over the years, Mr. Antebi had been reaping 70% of the depreciation.  Plaintiff learned this from the company's accountant

6

in or about April 2023, after Elliot Antebi's request to the accountant that he alter 169-171 BH LLC's Company's tax returns from inception, retroactively.

37.     At the time Plaintiff confronted Mr. Antebi just before Passover 2023 about the proposed retroactive changes to several years of K-1s, Elliot Antebi admitted to Plaintiff (A) he needed to show "on paper" that he was the majority owner of 169-171 BH LLC, and (B) he collected the money through Ellemark because he needed to show that the monies were not coming from a source unrelated to him (i.e. Mr. Eddi).

38.     Because Elliot Antebi controlled Ellemark, he was able to show proof of funds in Ellemark's account sufficient to satisfy his lenders.

39.     If the money had been wired to 169-171 BH LLC directly, Elliot Antebi would not have been able to use said funds to show proof of funds for his other private ventures.

40.     Elliot Antebi funneled Plaintiff's money through Ellemark and misrepresented to the lenders that Plaintiff's contributions were from Mr. Antebi and not the true source, Mr. Eddi.

41.     Elliot Antebi misreported his and Plaintiff's respective interests in 169-171 BH LLC, and profited off of that misrepresentation from 2019 forward.

### iii.     Sale of Property Without Plaintiff's Knowledge or Consent and Unfulfilled Promises to Provide Information

42.     On at least one prior occasion, Elliot Antebi sold an asset belonging to the Companies after he had received substantial loans from Plaintiff. Elliot Antebi after the sale failed to return the loan principal or accrued interest to Plaintiff. By way of example, Plaintiff made loans to 169-171 BH LLC of nearly $800,000 through 2023.

43.     Specifically, Elliot Antebi appears to have disposed of 171 1st Avenue, New York, NY (an asset of 169-171 BH LLC) in October 2023, and did not inform Plaintiff about the sale.

7

Prior to October 2023, Plaintiff made demands for accountings related to 169-171 BH LLC by phone and in person. Plaintiff's made requests for accountings orally at various points in 2022 and 2023, in response to which Elliot Antebi advised that the accountings would be produced. Plaintiff reiterated his requests directly to Elliot Antebi other times, including on April 1, 2023. In response thereto, on April 1, 2023, Elliot Antebi represented in an email that his "accountant has all numbers and should be able to share with you re 169-171 very very shortly."

44.     When no documents were provided, in July 2023, Plaintiff, through counsel, issued a notice to preserve documents to Mr. Antebi. The last time that Mr. Antebi engaged with Plaintiff directly in any way was prior to Plaintiff's counsel's July 2023 letter. Formal written document demands were also made by Plaintiff through counsel in October 2023, after Elliot Antebi told a mutual acquaintance that he intended to dispose of another company's properties in a deliberate attempt to thwart Mr. Eddi's investments in that company. No formal response was provided.

45.     In order to effectuate his disposal of 169-171 BH LLC's property without Plaintiff's knowledge or consent, Elliot Antebi executed and recorded a Substitute Mortgage and Mortgage Splitter Agreement, and accompanying mortgage note (see ¶ 13), in October 2023. The Substitute Mortgage and Mortgage Splitter Agreement and accompanying mortgage note were recorded on October 6, 2023 in the Public Records of New York City Register's Office under CRFN 2023101101017002.

### iv.     Mismanagement and Refusal to Respond to Member Requests

46.     The above-referenced mortgage modification came to Plaintiff's attention as a result of investigation spurred by Mr. Antebi's threat that he would be imminently selling company property out from under Plaintiff, and Elliot Antebi's request to 169-171 BH LLC's

accountants to alter retroactively the company's tax returns. Promises to deliver information relating thereto were made in writing by Elliot Antebi's real estate attorney on November 20, 2023. When nothing was received, follow up attempts were made in writing on December 22, 2023 and communications between counsel continued (with Elliot Antebi on copy) into January 2024.

47. On January 3, 2024, Elliot Antebi's real estate attorney confirmed in writing that "I will respond in more detail tomorrow."

48. No additional communications were ever received from Elliot Antebi's real estate attorney.

49. No written response was ever sent in response to any of Plaintiff's written requests for documents and information.

50. Mr. Antebi dropped off certain documents directly to Plaintiff's counsel's office receptionist on January 4, 2024. The documents are not responsive to Plaintiff's written demands. The documents that Mr. Antebi produced are woefully insufficient to be called business records.

51. Defendants and their counsel have repeatedly informed by Plaintiff, and his counsel, "to ask the accountant for records," which is confirmed in several written emails. The accountants directed Plaintiff back to Elliot Antebi.

52. Defendants' position that "Plaintiff should ask the accountant" is an admission that Mr. Antebi has not been maintaining records related to the company in his de-facto managerial role.

53. Several conversations occurred between counsel in November 2023 and December 2023 in which this firm specified exactly which documents Plaintiff required and was advised that the documents are in the Antebis' and Ellemark's possession and no one else's.

9

54.     During those conversations, Defendants' real estate counsel advised that they required a discovery confidentiality order before providing Plaintiff with any information. It is improper for a company's manager to demand a confidentiality order before providing a member with information related to the operations of the company.

55.     Elliot Antebi continues to contact certain rabbis, family members, mutual acquaintances, and other non-parties in order to request that they contact Plaintiff to provide him with reasonable assurances on Mr. Antebi's behalf that Mr. Antebi will make Plaintiff entirely whole, eventually.

v.     **High Interest Predatory Loans**

56.     On or about November 25, 2019, 169-171 BH LLC obtained a mortgage of $12,000,000 from BI 54, LLC, a private lender in Florida, which was recorded in the Public Records of New York City Register's Office under CRFN 2019000395254 encumbering the premises located at 169-171 First Ave, New York, New York.

57.     On or about October 6, 2023 the mortgage was split so that Mr. Antebi could sell 171 1st Avenue, but 169-171 BH LLC could retain the property located at 169 1st Avenue (see ¶¶ 13 and 45).

58.     Elliot Antebi and Ellemark caused high interest predatory loans to be placed upon 169-171 BH LLC, for their own private personal gain and without prior disclosure to Plaintiff, resulting in significant loan extension and servicing fees in 2022, and significantly, a monthly shortfall that Plaintiff was forced to carry, as demonstrated by Plaintiff's loans sto 169-171 BH LLC of: $17,400 on January 19, 2021, $22,000 on February 2, 2021, $41,000 on March 4, 2021, $25,000 on April 1, 2021, $20,000 on May 5, 2021, $20,000 on June 4, 2021, $18,000 on July 6, 2021, $18,000 on August 4, 2021, $40,000 on September 1, 2021, $17,000 on October

5, 2021, $20,000 on November 4, 2021, $27,000 on December 3, 2021, $15,000 on January 5, 2022, $25,000 on February 3, 2022, $23,000 on March 4, 2022, $52,000 on April 5, 2022, $7,500 on September 6, 2022, $15,000 on October 26, 2022, $6,000 on November 7, 2022, $20,000 on November 16, 2022, $50,000 on December 2, 2022, and $30,000 on December 23, 2022.

59.     During and as a result of Mr. Antebi's mismanagement of 167-171 BH LLC, it experienced losses of $695,709 in 2020 and $600,445 in 2021.

60.     Upon information and belief, Mr. Antebi characterized Plaintiff's contributions between January 2021 and December 2022 (and beyond) as loans, which remain outstanding to Plaintiff.

61.     Mr. Antebi has produced no financial books and records for 169-171 BH LLC for 2023 despite written assurances by him (April 1, 2023) and his counsel (November 2023 - January 2024).

## B. 262 BH LLC

### i.     Formation, Ownership, and Management

62.     Upon information and belief, non-party 262 BH LLC, is a Delaware limited liability company formed in the State of Delaware and governed by Delaware's Limited Liability Act (the "**Delaware Act**"), 6 *Del. C.* § 18-101 *et seq.*

63.     262 BH LLC is not governed by a written operating agreement.

64.     Pursuant to the Delaware Act, absent an operating agreement, the management of the company is vested in its members, unless a manager is appointed by vote or in writing, see, 6 *Del. C.* § 18-402, or unless the authority to take a particular action is delegated. See, 6 *Del. C.* § 18-407.

65.     Plaintiff and Elliot Antebi are its only members.

11

66.     262 BH LLC was formed in or about November 2018.

67.     Elliot Antebi engaged defendant Ellemark without authorization to manage the assets of 262 BH LLC. Ellemark's management of 262 BH LLC is evidenced by, among other things, the NYC Property Records Search performed on Realtyhop.com as follows:

.

**2020-02-11**

262 Bh LLC

**C/o:, Ellemark Management Llc 200 Park Avenue Suite 1700, New York, NY**

68.     Upon information and belief, 262 BH LLC does not maintain any written or other agreement with Ellemark authorizing it to manage any of its assets or affairs.

69.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to engage Ellemark (a company controlled by Elliot Antebi controls as its principal member) to act as property manager for 262 BH LLC.

70.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to hypothecate any asset 262 BH LLC.

71.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to lien any asset of 262 BH LLC.

72.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to pledge any asset of 262 BH LLC.

73.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to enter into any contract on behalf of 262 BH LLC.

74.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to sell, transfer, or otherwise dispose of any asset of 262 BH LLC.

75.     No company formalities were observed by Elliot Antebi in connection with his

de facto management of 262 BH LLC.

76.    Notwithstanding the foregoing, Elliot Antebi has been making all of the decisions for this company without disclosure to, regard for, or consent from Plaintiff.

77.    In doing so, Elliot Antebi engaged in self-dealing and, without utilizing proper business judgment, substantially mismanaged and damaged Plaintiff as a member of the company.

**ii.    Disproportionate Share of Distributions**

78.    According to 262 BH LLC's tax documents, in 2019 Elliot Antebi's capital account began at $1,157,064, but ended at -$202,659 (a negative number), representing distributions to him of $2,012,098.

79.    Mr. Antebi's membership interest is 75.5% (and Plaintiff's is 24.5%).

80.    Accordingly, for Mr. Antebi's distributions to be proportionate with Plaintiff's, Plaintiff would be due $625,743.23. However, Plaintiff received only $541,956 in distributions in 2019 per the K-1s.

81.    Similarly in 2020, based on the distributions to Mr. Antebi of $415,050, Plaintiff was entitled to distributions of $126,432.25. However, Plaintiff received only $101,000 in distributions in 2019 per the K-1s.

**iii.    Disproportionate Share of Profits**

82.    The tax returns for 2020 also denote that Mr. Antebi received profits of $617,709 (and made distributions to himself of $415,050) while Plaintiff received only $35,866 in profits that year; $124,259.87 in profits due to Plaintiff were unpaid at the end of 2020.

83.    No information for 262 BH LLC beyond 2020 has been produced by Defendants despite demands therefor. Plaintiff made specific written requests for these

13

documents through counsel in December 2023.

### iv.    Unauthorized Sale of Company Assets

84.    At or near the time of 262 BH LLC's formation, it acquired certain real property located at 262 Mott Street, New York, NY for $7,400,000.

85.    Upon information and belief, Mr. Antebi and Ellemark have coordinated the sale of the aforementioned real property in February 2022.

### C.  Downtown BH LLC

86.    Upon information and belief, non-party Downtown BH LLC, is a Delaware limited liability company formed in the State of Delaware and governed by Delaware's Limited Liability Act (the "**Delaware Act**"), 6 *Del. C.* § 18-101 *et seq.*

87.    Downtown BH LLC is not governed by a written operating agreement.

88.    Pursuant to the Delaware Act, absent an operating agreement, the management of the company is vested in its members, unless a manager is appointed by vote or in writing, see, 6 *Del. C.* § 18-402, or unless the authority to take a particular action is delegated. See, 6 *Del. C.* § 18-407.

89.    Downtown BH LLC was formed in or about November 2016.

90.    Plaintiff and Elliot Antebi are its only members.

91.    Ellemark's management of Downtown BH LLC is evidenced by the entries in the limited general ledgers that Plaintiff has available which show disbursements by Downtown BH LLC to Ellemark.

92.    Upon information and belief, Downtown BH LLC does not maintain any written or other agreement with Ellemark authorizing it to manage any of its assets or affairs.

93.    Despite the complete absence of any action by the members of the Downtown

14

BH LLC appointing Antebi as Managing Member or delegating relevant authority to him under the Delaware Act, Antebi has improperly exercised control over Downtown BH LLC.

94.     No meeting was held, and no vote was taken, in connection with the appointment of any manager or managing member, or the delegation to Elliot Antebi of any power or right to act which would comport with the Delaware Act. See, 6 *Del. C.* § 18-407.

95.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to engage Ellemark (a company controlled by Elliot Antebi controls as its principal member) to act as property manager for any asset of Downtown BH LLC.

96.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to hypothecate any asset of Downtown BH LLC.

97.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to lien any asset of Downtown BH LLC.

98.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to pledge any asset of Downtown BH LLC.

99.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to enter into any contract on behalf of Downtown BH LLC. .

100.     No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to sell, transfer, or otherwise dispose of any asset of Downtown BH LLC.

101.     No company formalities were observed by Elliot Antebi in connection with his de facto management of Downtown BH LLC.

15

102.    Notwithstanding the foregoing, Elliot Antebi has been making all of the decisions for this company without disclosure to, regard for, or consent from Plaintiff.

103.    In doing so, Elliot Antebi engaged in self-dealing and, without utilizing proper business judgment, substantially mismanaged Downtown BH LLC and thus damaged Plaintiff.

104.    During and as a result of Mr. Antebi's mismanagement of the Company, the losses climbed from roughly $2,000 in the first year (2016), to more than $125,000 in the second year (2017). The company suffered further losses in the following years of $112,820.48, $74,300.27, $217,817.11, and $191,299.37 (for a total loss through the end of 2021 of $732,505.56).

105.    Furthermore, Elliot Antebi and Ellemark appears to have failed to maintain Downtown BH LLC's corporate status in Florida by allowing Downtown BH LLC's business registration to become suspended in Florida, the only state in which Downtown BH LLC owned any assets.

**D.   Downtown NS LLC**

    **i.   Formation, Ownership, and Management**

106.    Upon information and belief, non-party Downtown NS LLC is a Delaware limited liability company formed in the State of Delaware and governed by Delaware's Limited Liability Act (the "**Delaware Act**"), 6 *Del. C.* § 18-101 *et seq.*

107.    Plaintiff and Elliot Antebi are each a member of Downtown NS LLC.

108.    Downtown NS LLC is not governed by a written operating agreement.

109.    Downtown NS LLC was formed in 2018.

110.    Ellemark's management of Downtown NS LLC is evidenced by the entries in the limited general ledgers that Plaintiff has available which show disbursements by Downtown

16

NS LLC to Ellemark.

111.    Upon information and belief, Downtown NS LLC does not maintain any written or other agreement with Ellemark authorizing it to manage any of its assets or affairs.

112.    Despite the complete absence of any action by the members of Downtown NS LLC appointing Antebi as Managing Member or delegating relevant authority to him under the Delaware Act, Antebi has unlawfully exercised control over Downtown NS LLC.

113.    No meeting was held, and no vote was taken, in connection with the appointment of any manager or managing member, or the delegation to Elliot Antebi of any power or right to act which would comport with the Delaware Act. See, 6 *Del. C.* § 18-407.

114.    No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to engage Ellemark (a company controlled by Elliot Antebi controls as its principal member) to act as property manager for Downtown NS LLC.

115.    No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to hypothecate any asset of Downtown NS LLC.

116.    No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to lien any asset of Downtown NS LLC.

117.    No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to pledge any asset of Downtown NS LLC.

118.    No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to enter into any contract on behalf of Downtown NS LLC .

119.    No resolutions were executed by Plaintiff, or upon information and belief the other members, authorizing Elliot Antebi to sell, transfer, or otherwise dispose of any asset of

Case 1:26-cv-02647-NRM-JRC Document 190-1 Filed 06/22/26 Page 19 of 64 PageID
Case 1:24-cv-00520-JPC Document 43 Filed 04/25/24 Page 18 of 61
#: 107

Downtown NS LLC.

120. No company formalities were observed by Elliot Antebi in connection with his de facto management of any asset of Downtown NS LLC.

121. Notwithstanding the foregoing, Elliot Antebi has been making all of the decisions for this company without disclosure to, regard for, or consent from Plaintiff.

122. In doing so, Elliot Antebi engaged in self-dealing and, without utilizing proper business judgment, substantially mismanaged Downtown NS LLC and thus damaged Plaintiff as a member.

ii. **High Interest Predatory Loans**

123. In or about 2018, Elliot Antebi, without authorization, hypothecated assets of Downtown NS LLC in exchange for a loan of $4,100,000 at 2.75% over prime, or 7.75%. This hypothecation was performed by Elliot Antebi, without disclosing to, consulting with, or regard to the interests of his fellow members, and while simultaneously requiring Plaintiff to make unmatched loans and capital contributions. Elliot Antebi did not consider or make any request for capital contributions from any member other than Plaintiff in lieu of hypothecating the assets of this company in connection with the aforementioned loan.

124. Elliot Antebi, without authorization, hypothecated assets of Downtown NS LLC in November 2020 in exchange for a loan of $4,700,000 at 6.5% above Prime (and never less than 9.75). This hypothecation was performed by Elliot Antebi, without disclosing to, consulting with, or regard to the interests of his fellow members, and while simultaneously requiring Plaintiff to make unmatched loans and capital contributions. Elliot Antebi did not consider or make any request for capital contributions from any member other than Plaintiff in lieu of hypothecating the assets of this company in connection with the aforementioned loan.

125.    Elliot Antebi, without authorization, hypothecated assets of Downtown NS LLC in December 2021 in exchange for a loan of $5,000,000 at 2.25% above Prime. This hypothecation was performed by Elliot Antebi, without disclosing to, consulting with, or regard to the interests of his fellow members, and while simultaneously requiring Plaintiff to make unmatched loans and capital contributions. Elliot Antebi did not consider or make any request for capital contributions from any member other than Plaintiff in lieu of hypothecating the assets of this company in connection with the aforementioned loan.

126.    Upon information and belief, Elliot Antebi (through Ellemark) was receiving a six-figure finder's fee in exchange for pledging assets of Downtown NS LLC in connection with the loans.

127.    To the extent that Elliot Antebi misrepresented to any non-party, including but not limited to "Trex" "Fuse 10" and "Northeast" in the course of any transaction related to the disposition of any Companies' assets, that he had Plaintiff's consent to do said transaction, that is a material misrepresentation. Plaintiff only learned of the transactions in October 2023 second-hand. Plaintiff has made clear to Mr. Antebi that he had and has no authority to so act and any representation otherwise is a clear misrepresentation.

### iii.    Threats to Dispose of Assets to Plaintiff's Detriment

128.    In October 2023, Elliot Antebi threatened, through a mutual acquaintance, to dispose of Downtown NS, LLC's assets to thwart Mr. Eddi's investments in the company and the property.

129.    Shortly thereafter, in October 2023, Plaintiff through counsel formally notified Mr. Antebi, by letter that (i) Plaintiff did not consent to any sale of Downtown NS LLC's assets, and (ii) demanded he provide an immediate accounting of all activities related to the company

and its assets. A copy was also sent to Mr. Antebi's legal counsel at Wasserstein & Nunez, PLLC (known to Plaintiff as Elliot Antebi's real estate attorney), which previously accepted Plaintiff's wire transfers of funds relevant to this lawsuit.

130.    Elliot Antebi's counsel responded in order to dissuade Plaintiff from filing the instant complaint, as follows: "Additionally, I wish to reiterate that the filing of a complaint or other public demand will seriously harm the Property owned by Downtown NS, LLC, which is the sole source of payment to Mr. Eddy, and which will cause unnecessary lose and damage to the other members. My client continues to work diligently with the current lender and other opportunities, and any filing will cause, as stated, irreparable injury to the Property."

131.    Neither Elliot Antebi nor his counsel provided any information related to negotiations or transactions 'by Elliot Antebi on behalf of Downtown NS, LLC in 2023/2024. Even the initial loan documents were not produced until January 2024.

132.    Given that Plaintiff remains completely in the dark as to the operations involving Downtown NS, LLC, this suit was filed on January 25, 2024.

### iv.    Other Mismanagement

133.    In March 2022, Elliot Antebi and Ellemark allowed to be placed Unsafe Structure Orders on Downtown NS LLC's property.

134.    In June 2022, Elliot Antebi and Ellemark allowed to be placed Unsafe Structure Orders on Downtown NS LLC's property.

135.    In December 2022, Elliot Antebi and Ellemark allowed to be placed Unsafe Structure Orders on Downtown NS LLC's property.

136.    In June 2023, Elliot Antebi and Ellemark allowed to be placed an Unsafe Structure Orders on Downtown NS LLC's property.

137.    Elliot Antebi and Ellemark allowed a 2022 Claim of Lien to be placed on Downtown NS, LLC's property by Eco Water Restoration.

138.    Finally, in January 2022, Elliot Antebi and Ellemark allowed Downtown NS LLC's property to become the subject of an Assignment of Rents.

139.    Rents were never enough to cover the losses, with Plaintiff being asked to disproportionately absorb said losses year after year.

140.    Specifically, during and as a result of Mr. Antebi's mismanagement of Downtown NS LLC, the losses climbed from $139,524 in 2018, to $286,852 in 2019, to $457,303 in 2020, and to $978,426 in 2021 (per the company's tax documents).

141.    To cover the losses, Elliot Antebi made requests for capital infusions from Plaintiff in July 2020 (among other times). At the end of July 2020, Elliot Antebi represented to Plaintiff that all other members would be making proportionate contributions.

142.    In the fall of 2021, Elliot Antebi advised that he would approach other members to obtain proportionate capital contributions in order to reimburse Plaintiff.

143.    In July 2023, Elliot Antebi was forced to concede that he had not inquired with the other members about proportionate contributions and that it was too late to do so; as a "concession" he offered to set Plaintiff up with a buyer to purchase Plaintiff's shares at a significant discount, which was unacceptable to Plaintiff who would be deprived of whatever remaining investment he has.

### v.    **Unreturned Collateral and Unmatched Contributions**

144.    Plaintiff has made loans which have not been repaid and capital contributions to the Companies at the demand of Elliot Antebi; however, upon information and belief, matching contributions were neither sought by, nor made by, Elliot Antebi. Plaintiff's requests for

repayment of his unmatched loans and for matching capital calls have been ignored and/or rejected.

145. Specifically, in or about July 2020, at Elliot Antebi's request, Plaintiff collateralized certain personalty to obtain a loan needed for the WPM, owned by Downtown NS LLC, at Elliot Antebi's urging and based on his material misrepresentations. In connection therewith, Plaintiff contributed $310,000 on July 31, 2020 into the attorney trust account of Elliot Antebi's real estate attorney, as a loan, to be returned no later than 90 days after the date that it was issued at an interest rate of 1.5%. Mr. Antebi promised to repay the full amount, plus all interest which accrued thereupon, directly to the entity which to which the collateral were pledged, no later than 90 days after the loan proceeds were disbursed. To date, Plaintiff has not received the return of any interest that he had paid in connection with that loan, and he has only received part of his principal back. The collateralized personalty remain collateralized.

146. At the end of July 2020, Elliot Antebi represented to Plaintiff that all other members would be making proportionate contributions.

147. In the fall of 2021, Elliot Antebi advised that he would approach other members to obtain proportionate capital contributions in order to reimburse Plaintiff.

148. In July 2023, Elliot Antebi was forced to concede that he had not inquired with the other members about proportionate contributions and that it was too late to do so.

## E. SOMI Retail BH LLC and S Miami Retail BH LLC

149. SOMI Retail BH LLC and S Miami Retail BH LLC are limited liability companies formed in the State of Florida and governed by Florida's Revised Limited Liability Act, F.S.A. §605.0101 *et seq.* (the **"Florida Act"**). Plaintiff and Elliot Antebi are each members of SOMI Retail BH LLC. SOMI Retail BH LLC is a member of S Miami Retail BH

22

Case 1:26-cv-02647-NRM-JRC    Document 190-1    Filed 06/22/26    Page 24 of 64 PageID
Case 1:24-cv-00520-JPC    Document 43    Filed 04/25/24    Page 23 of 61
#: 112

LLC.

150.     During and as a result of Mr. Antebi's mismanagement of S Miami Retail BH LLC, that company experienced losses of $465,895 in 2017, $305,030 in 2018, $367,993 in 2019, $386,806 in 2020, and $324,563 in 2021 per the company's tax documents. Fifty (50%) of these losses were absorbed by SOMI Retail BH LLC, in which Plaintiff holds a membership interest.

151.     Pursuant to the Florida Act, absent an operating agreement, the management of the company is vested in its members, unless a manager is appointed by vote or in writing, see, _F.S.A._ §§ 605.0407 and 605.04073, or unless the authority to take a particular action is delegated. See, _F.S.A._ § 605.04071.

152.     Formal demands were made to the Companies and to Elliot Antebi in December 2023, but no written response has been provided nor any documents have been produced in response thereto related to SOMI Retail BH LLC and S Miami Retail BH LLC.

## II.    OTHER TRANSACTIONS

### A. Summer Rental

153.     Plaintiff agreed to rent his home in Long Branch, NJ to Defendants Mr. and Mrs. Antebi for the summer (June – August 2021).

154.     The Antebis occupied the residence from June – August 2021 as their summer home.

155.     The Antebis offered to pay $50,000 for the rental. Plaintiff agreed to, and did rent the summer home to Elliot Antebi for June – August 2021 at $50,000, even though he had an offer elsewhere for $60,000. The parties agreed that the rental fee would be due prior to the conclusion of the rental term.

156.     During the rental term, before the Antebis paid the rental fee of $50,000, Elliot

Antebi advised that the Antebis were interested in acquiring an investment property located at Pine Tree Drive in Miami, FL, for the purposes of "flipping" it.

157.    Elliot Antebi requested that Plaintiff accept a share of the profits therefrom, in lieu of the rental fee, provided that Plaintiff also tender the sum of $210,000 as a capital contribution towards the purchase of the Pine Tree Drive residence.

158.    At the time that he solicited the investment from Plaintiff, Elliot Antebi represented that the "flip" would see $800,000 in profits.

159.    In reliance on Elliot Antebi's representations as aforesaid, Plaintiff agreed to reinvest the $50,000 rental fee into the Pine Tree Drive home.

160.    Based on Elliot Antebi's representations as aforesaid, Plaintiff transferred to Rachel Sutton the sum of $210,000 on August 24, 2021 to her First Republic Bank Account in order for the Antebis to purchase the Pine Tree Drive property.

B. **Pine Tree Drive, Miami, FL**

161.    In or about October 2021, after having received the benefit of $260,000 from Plaintiff, Elliot Antebi informed Plaintiff that he had found a buyer for the Pine Tree Drive property and affirmed that they would make roughly $800,000 in profits on the sale. According to Elliot Antebi, the sale was scheduled to be completed "by the end of 2021."

162.    Given that the Pine Tree Drive sale was looming, Elliot Antebi asked Plaintiff in October 2021 to collateralize certain of Plaintiff's personalty and provide the proceeds of that collateralization arrangement to the Antebis.

163.    At the time that Mr. Antebi made his request of Plaintiff, Mr. Antebi advised that the Antebis needed to acquire $1,500,000 in liquid funds in order to complete the purchase of the Antebi's new principal residence in Brooklyn, NY.

24

Case 1:26-cv-02647-NRM-JRC    Document 190-1    Filed 06/22/26    Page 26 of 64 PageID
Case 1:24-cv-00520-JPC    Document 43    Filed 04/25/24    Page 25 of 61
#: 114

164.    At the time that Elliot Antebi made the request to Plaintiff, Elliot Antebi assured Plaintiff that all proceeds that the Antebis received from the collateralization, and all interest thereupon which Plaintiff was forced to carry on behalf of the Antebis would be satisfied at the time that the Antebis closed on the sale of the Pine Tree Drive residence the following month (November 2021).

165.    At the time that Elliot Antebi made the request to Plaintiff, Elliot Antebi also represented to Plaintiff that he would be able to promptly repay the proceeds to secure the return of the collateral, even taking into account the purchase of his new residence.

166.    Based on Mr. Antebi's representations to him, Plaintiff pledged and collateralized for the benefit of the Antebis, on or about October 26, 2021, certain valuable personal property in order to secure a loan made by non-parties directly to Rachel Antebi f/k/a Sutton, to wit certainty personalty (the "**Collateral**").

167.    The initial collateralization was made pursuant to the terms of a written asset purchase and sale agreement dated in or about October 2023, with Plaintiff reserving a right to repurchase for 30 days, subject to up to eleven (11) one-month extensions, each at the cost. Rachel Antebi f/k/a Sutton is a party to the asset purchase and sale agreement.

168.    In exchange, Rachel Antebi f/k/a Sutton received a loan of $1,500,000.

169.    Under the terms of the contract under which the Collateral was pledged and collateralized, the Collateral may be recovered by Plaintiff if Rachel Antebi f/k/a Sutton returns the proceeds by a set deadline. There is a fee assessed to Plaintiff to preserve his rights in the Collateral and extend the deadline to reclaim it, and eventually, the Collateral will be forfeited if left unpaid by Rachel Antebi f/k/a Sutton.

170.    Elliot and Rachel Antebi closed on the later sale of the Pine Tree Drive property

25

in November 2021.

171. However, when Elliot and Rachel Antebi closed on the later sale of the Pine Tree Drive property in November 2021, neither provided Plaintiff with notice that the sale had been consummated.

172. When Elliot and Rachel Antebi closed on the sale of the Pine Tree Drive property in November 2021, they did not repay any portion of Plaintiff's investment or the loan.

173. Upon information and belief, the Antebis concealed the sale of the Pine Tree Drive property from Plaintiff in order to avoid their obligations to pay him.

174. Thereafter, Elliot and Rachel Antebi unilaterally decided to take the proceeds due to Plaintiff and apply it as a personal loan for the purchase of their new home without Plaintiff's knowledge or permission in or about December 2021.

175. Although Elliot and Rachel Antebi did repay Plaintiff a portion of the loan later, Plaintiff has been paying interest on the unpaid remainder as it has been accruing and the Collateral remains unrecovered and at risk.

## COUNT I
### DEMAND FOR ACCOUNTING
### (Against Elliot Antebi and Ellemark Management LLC)

176. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of the complaint as if fully set forth herein.

177. Many of the representatives identified herein concerning the Companies were made by Antebi individually and on behalf of Ellemark.

178. Relief is sought against Elliot Antebi, as a result of his de facto management of the assets of the Companies, to obtain the information and documents in Elliot Antebi's custody, possession, or control pertaining to the companies' operations.

26

179.     Relief is sought against Ellemark to the extent that it was the vehicle through which Elliot Antebi managed the affairs of the Companies, and, separately, the vehicle for his fraudulent conduct, as described elsewhere herein.

180.     Plaintiff, as a member of the Companies, is entitled to the information and documents pertaining to the Companies' operations which is in Ellemark's custody, possession, or control.

181.     Plaintiff has no access to the bank accounts or banking records of the Companies, and only limited information as to the (a) transactions that Elliot Antebi engaged in related to the assets of the Companies, including but not limited to mortgages and notes, mortgage consolidation and split arrangements, pledges, hypothecations and liens, or (b) the disbursements that Elliot Antebi has taken, or perhaps incorrectly classified as business expenses, when in actuality they are private disbursements.

182.     The only way to verify the extent of Defendants' self-dealing, disproportionate receipt of profits, and failure to match capital calls, as well as the flow of money in and out of the Companies, is to review the records which are solely in Defendants' possession.

A. **To Account for Unauthorized Disbursements to and Cash Withdrawals by Defendants**

183.     By way of example, the miniscule records produced on behalf of 169-171 BH LLC show dozens of unidentified withdrawals from the company funds by Elliot Antebi, and Rachel Sutton, AND also dozens of withdrawals in cash made by them and Ellemark between 2020 and 2022.

184.     The same documents neither show a record of Plaintiff's 2019 capital contributions, nor the contribution made by Elliot Antebi through Ellemark using Plaintiff's capital contributions.

27

**B.** **To Account for Misrepresentations of Company Interest Related to 169-171 BH LLC**

185.     Ellemark and Elliot Antebi's took and used Plaintiff's funds for their own gain to show their financial strength and support their ownership interest in the 169-171 BH LLC. Defendants did this unlawfully without authority.

186.     Ellemark, being solely controlled by Elliot Antebi, received and misapplied millions of dollars which it received from Plaintiff. By way of specific example, but not limitation, Elliot Antebi solicited, and through Ellemark accepted capital contributions towards 169-171 BH LLC from Plaintiff into (A) Ellemark's Capital One Account (ending in 3603): (1) $1,870,000 on November 22, 2019, and (2) $50,000 on November 25, 2019 to Ellemark, and Elliot Antebi's Wells Fargo account (ending in $100,000 between October 24-25, 2019, and $50,000.00 in November 20, 2019.

187.     Elliot Antebi represented to Plaintiff that the funds were to be utilized to secure a 70% interest in 169-171 BH LLC.

188.     The K-1 for 2019 for 169-171 BH LLC shows that Elliot Antebi is both a 30% owner and a 70% owner, and Mr. Eddi is not listed as an owner.

189.     Mr. Eddi is listed as a 30% owner of 169-171 BH LLC in 2020; however, the contribution attributable to Mr. Eddi is $862,049, while Mr. Antebi's capital contribution for 2020 was reflected to be $2,011,448.00.

190.     Antebi directed Plaintiff to contribute capital through Ellemark and misrepresented Plaintiff's ownership interest, leading to discrepancies in reported percentages and financial losses.  These false representations were material and Plaintiff relied on them to his detriment.

## C. To Discovery Reasons for Losses Related to 169-171 BH LLC, Downtown BH LLC, Downtown NS LLC, S Miami Retail BH LLC, and SOMI Retail BH LLC

191.    During Elliot Antebi's de facto management of 169-171 BH LLC, Downtown BH LLC, Downtown NS LLC, S Miami Retail BH LLC, and SOMI Retail BH LLC, each suffered significant losses year after year without explanation.

192.    Plaintiff logged several complaints during discussions with Mr. Antebi between 2020-2023 that he was forced to carry a disproportionate of the losses of each of the aforementioned companies and received reasonable assurances each time that Plaintiff would see the full return of all monies paid all the way up until July 2023.

## D. To Discover Reasons for Disproportionate Sharing of Distributions and Profits Related to 262 BH LLC

193.    As described more fully above, in 2019 and 2020 Mr. Antebi received a disproportionate share of distributions in connection with 262 BH LLC, to Plaintiff's detriment.

194.    As described more fully above, in 2020 Mr. Antebi received a disproportionate share of profits in connection with 262 BH LLC, to Plaintiff's detriment.

## E. To Verify Distributions Made With Transfers of Equity

### a. Downtown NS LLC

195.    In 2018, Downtown NS LLC had five (5) members; in 2019, it had six (6). Simultaneously, Plaintiff's shares were apparently diluted. In 2020, one of the company's members appears to have transferred its membership interest to another party. Plaintiff is entitled to all documentation concerning the aforementioned actions, including but not limited to documentation of distributions made at the times of such actions.

### b. 169-171 BH LLC

196.    As described in greater specificity above, in 2019, Plaintiff made a substantial

29

Case 1:26-cv-02647-NRM-JRC    Document 190-1    Filed 06/22/26    Page 31 of 64 PageID
Case 1:24-cv-00520-JPC    Document 43    Filed 04/25/24    Page 30 of 61
#: 119

capital contribution to secure its 70% membership interest in 169-171 BH LLC, but according to company records, 100% of the company's membership interest in 2019 is documented as belonging to Elliot Antebi. In 2020, Plaintiff is afforded only 30%. In 2021, Elliot Antebi transferred 70% of the interest to Elliot Antebi and Rachel Sutton, Husband and Wife. Plaintiff is entitled to all documentation concerning the aforementioned actions, including but not limited to documentation of distributions made at the times of such actions.

### c. SOMI Retail BH LLC

197.    In 2020, SOMI Retail BH LLC had six (6) members; in 2021 it had seven (7). Simultaneously, Plaintiff's shares were apparently diluted. Plaintiff is entitled to all documentation concerning the aforementioned actions, including but not limited to documentation of distributions made at the times of such action.

### F. To Account for the Coming and Going of Assets Belonging to 262 BH LLC, 169-171 BH LLC, Downtown NS, LLC, Downtown BH, LLC and S Miami Retail LLC

198.    Upon information and belief, Elliot Antebi has acquired and disposed of assets belonging to 262 BH LLC, to wit 262 Mott Street in New York City, without an accounting.

199.    Upon information and belief, Elliot Antebi has acquired and disposed of assets belonging to 169-171 BH LLC, to wit 171 1st Street in New York City, without an accounting.

200.    Upon information and belief, Elliot Antebi has acquired and disposed of, or intends to dispose of, assets belonging to 169-171 BH LLC, to wit 169 1st Street in New York City, without an accounting.

201.    Upon information and belief, Elliot Antebi has acquired and disposed of, or intends to dispose of, assets belonging to Downtown NS LLC in Miami Florida, without an accounting. In October 2023, Elliot Antebi made specific threats to dispose of Downtown NS, LLC's assets in a deliberate attempt to thwart Mr. Eddi's investments in the company and the

30

property.

202.    Upon information and belief, Elliot Antebi has acquired and disposed of, or intends to dispose of, assets belonging to Downtown BH LLC in Miami, FL, without an accounting.

203.    Upon information and belief, Elliot Antebi has acquired and disposed of assets belonging to S Miami Retail BH LLC, and therethrough SOMI Retail BH LLC, in Miami, FL, without an accounting.

204.    Plaintiff has no transaction information or documents which would allow Plaintiff to ascertain the terms under which said assets were disposed, any proceeds derived therefrom, or any disbursements made of those proceeds.

205.    On at least one occasion previously, Elliot Antebi sold an asset belonging to the Companies in connection with which he received a loan from Plaintiff, but neither at the time of the sale nor anytime thereafter returned the loan principal or accrued interest to Plaintiff. Elliot Antebi must be compelled to identify all disbursements that he made related to the sale of any asset belonging to the Companies.

### G. Conclusion

206.    As a member of the Companies, Plaintiff has the right to inspect the books and records maintained by the Companies in good faith for the purposes of auditing and investigating Elliot Antebi's conduct in regard to managing the Companies' assets, especially where Antebi has been doing so without keeping Plaintiff apprised of his activities, and where Plaintiff is owed money.

207.    The relief sought herein is limited to those books and records that are within the exclusive possession, custody and control of Elliot Antebi and Ellemark.

31

Case 1:26-cv-02647-NRM-JRC   Document 190-1   Filed 06/22/26   Page 33 of 64 PageID
Case 1:24-cv-00520-JPC   Document 43   Filed 04/25/24   Page 32 of 61
#: 121

208.     Plaintiff makes application to the Court seeking to inspect books and records in the possession or under the control of Ellemark or Elliot Antebi relating to the management and operation of the Companies, as Elliot and Ellemark have refused to respond to prior demands.

## COUNT II
## BREACH OF FIDUCIARY DUTIES RELATED TO 169-171 BH LLC
### (Against Elliot Antebi and Ellemark LLC)

209.     Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of the complaint as if fully set forth herein.

### a.  As against Elliot Antebi

210.     Elliot Antebi, as a member of the company, by taking it upon himself without observing company formalities or obtaining a vote or consent of his fellow members when unilaterally making (at times self-interested) decisions for the company, owes strict fiduciary duties to act in good faith and with fair dealing, with loyalty, and with transparency to Plaintiff and the other members of the Companies.

211.     Further, by stepping into the role of the "de facto" manager of the Companies, Elliot Antebi took it upon himself to be responsible for the management of the Companies and their assets and thereby owed a fiduciary duty of loyalty to Plaintiff and the other members of the Companies in connection therewith.

212.     Elliot Antebi breached his fiduciary obligations to Plaintiff, as a member of 169-171 BH LLC, as aforesaid, through his unauthorized management and mismanagement of the company, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

213.     Elliot Antebi breached his fiduciary obligations to Plaintiff, as a member of

32

169-171 BH LLC, as aforesaid, through his misreporting of membership interests, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

214.   Elliot Anteb, breached his fiduciary obligations to Plaintiff, as a member of 169-171 BH LLC, as aforesaid, through his unauthorized disposal of company assets and arrangement of high interest loans for personal gain and without prior disclosure to the other of the company's members, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

215.   Elliot Antebi breached his fiduciary obligations to Plaintiff, as a member of 169-171 BH LLC, as aforesaid, through his failure to maintain proper management records and efforts to restrict access to information related to the activities and affairs of the companies which Mr. Antebi managed for Plaintiff's benefit, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

b.   **As against Ellemark**

216.   Ellemark engaged in the mismanagement of company assets, as aforesaid, as a vehicle for Elliot Antebi.

217.   Ellemark had a duty to ensure that all transactions and actions it facilitated were conducted in accordance with legal and regulatory requirements, including proper authorization from the company's members.

218.   In breach of its fiduciary obligations to Plaintiff, Ellemark's management of company assets, as aforesaid, was performed without proper delegation of authority.

219.   In breach of its fiduciary obligations to Plaintiff, Ellemark's management of company assets, as aforesaid, was performed without written agreement.

220.   In breach of its fiduciary obligations to Plaintiff, Ellemark facilitated Elliot

33

Antebi's various misrepresentations, including misrepresentation of the Plaintiff's ownership interest and the misuse of Plaintiff's capital contributions by processing and handling those contributions as directed by Mr. Antebi and contrary to the way that it was represented to Plaintiff, resulting in substantial damages to Plaintiff.

221.    In breach of its fiduciary obligations to Plaintiff, Ellemark facilitated Elliot Antebi's disposal of 171 1st Street, New York, NY without appropriate renumeration to Plaintiff, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

<u>COUNT III</u>
<u>BREACH OF FIDUCIARY DUTIES RELATED TO 262 BH LLC</u>
<u>(Against Elliot Antebi and Ellemark LLC)</u>

222.    Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of the complaint as if fully set forth herein.

**a. As against Elliot Antebi**

223.    Elliot Antebi breached his fiduciary obligations to Plaintiff, as a member of 262 BH LLC, as aforesaid, through his taking of disproportionate shares of distributions and profits, resulting in substantial damages to Plaintiff.

224.    Elliot Antebi breached his fiduciary obligations to Plaintiff, as a member of 262 BH LLC, as aforesaid, through his unauthorized disposal of company assets at 262 Mott Street, resulting in substantial damages to Plaintiff.

225.    Elliot Antebi breached his fiduciary obligations to Plaintiff, as a member of 262 BH LLC, as aforesaid, through his unauthorized management and mismanagement of the company, resulting in substantial damages to Plaintiff.

226.    Elliot Antebi breached his fiduciary obligations to Plaintiff, as a member of 262 BH LLC, as aforesaid, through his failure to maintain proper management records and efforts to

restrict access to information related to the activities and affairs of the companies which Mr. Antebi managed for Plaintiff's benefit, resulting in substantial damages to Plaintiff.

227.     Elliot Antebi, in coordination with Ellemark, facilitated the unauthorized sale of company assets belonging to 262 BH LLC. This includes the sale of real property located at 262 Mott Street, New York, NY, without proper authorization from the members of the company, resulting in substantial damages to Plaintiff.

### b.  As against Ellemark

228.     Ellemark engaged in the mismanagement of company assets, as aforesaid, as a vehicle for Elliot Antebi.

229.     In managing and facilitating the sale of company assets, Ellemark had a duty to Plaintiff, including the duty to ensure that all transactions and actions it facilitated were conducted in accordance with legal and regulatory requirements, including proper authorization from the company's members.

230.     In breach of its fiduciary obligations to Plaintiff, Ellemark facilitated Elliot Antebi's misappropriation and of the Plaintiff's ownership interest and the misuse of plaintiff's capital contributions by processing and handling those contributions as directed by Mr. Antebi, resulting in substantial damages to Plaintiff.

231.     In breach of its fiduciary obligations to Plaintiff, Ellemark facilitated Elliot Antebi's disposal of 262 Mott Street, New York, NY, resulting in substantial damages to Plaintiff.

232.     Ellemark's management of company was performed without proper delegation of authority.

233.     Ellemark's management of company was performed without written agreement.

Case 1:26-cv-02647-NRM-JRC   Document 190-1   Filed 06/22/26   Page 37 of 64 PageID
Case 1:24-cv-00520-JPC   Document 43   Filed 04/25/24   Page 36 of 61
#: 125

## COUNT IV
## BREACH OF FIDUCIARY DUTIES RELATED TO DOWNTOWN BH LLC
### (Against Elliot Antebi and Ellemark LLC)

234. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of the complaint as if fully set forth herein.

235. Elliot Antebi's mismanagement of Downtown BH LLC and decision-making without proper business judgment and member authorization, constitutes a breach of fiduciary duty, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

236. Elliot Antebi also engaged in unauthorized self-dealing by making significant disbursements to Ellemark out of company funds, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

237. Elliot Antebi's mismanagement of Downtown BH LLC, led to significant financial losses which Plaintiff was forced to disproportionately carry, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

238. Ellemark mismanaged assets, as a vehicle for Elliot Antebi, without consent from the other members of the company, and made decisions on behalf of the company without proper delegation of authority, resulting in substantial damages to Plaintiff.

## COUNT V
## BREACH OF FIDUCIARY DUTIES RELATED TO DOWNTOWN NS LLC
### (Against Elliot Antebi and Ellemark LLC)

239. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of the complaint as if fully set forth herein.

**a. As against Elliot Antebi**

240. Elliot Antebi breached his fiduciary obligations to Plaintiff, as a member of Downtown NS LLC, as aforesaid, through his unauthorized management and mismanagement of

36

Case 1:26-cv-02647-NRM-JRC    Document 190-1    Filed 06/22/26    Page 38 of 64 PageID
Case 1:24-cv-00520-JPC    Document 43    Filed 04/25/24    Page 37 of 61
#: 126

the company, resulting in substantial damages to Plaintiff.

241.    Elliot Antebi breached his fiduciary obligations to Plaintiff, as a member of Downtown NS LLC, as aforesaid, through his actual or threatened unauthorized disposal of company assets, resulting in substantial damages to Plaintiff.

242.    Elliot Antebi breached his fiduciary obligations to Plaintiff, as a member of Downtown NS LLC, as aforesaid, by arranging high interest loans for personal gain and without prior disclosure to the other of the company's members, resulting in substantial damages to Plaintiff.

243.    Elliot Antebi breached his fiduciary obligations to Plaintiff, as a member of Downtown NS LLC, as aforesaid, by soliciting capital contributions from Plaintiff, but failing to make or call for proportionate contributions from other members, contrary to his prior express representations. Plaintiff has not received repayment for these unmatched contributions.

244.    Elliot Antebi breached his fiduciary obligations to Plaintiff, as a member of Downtown NS LLC, by allowing to be placed on Downtown NS LLC's property certain unsafe structure orders, vendor liens, and assignments of rents, thus exposing said assets to risk.

245.    Elliot Antebi breached his fiduciary obligations to Plaintiff, as a member of Downtown NS LLC, through his failure to maintain proper management records and his efforts to restrict access to information related to the activities and affairs of the company which Mr. Antebi managed for Plaintiff's benefit, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

### b. As against Ellemark

246.    Ellemark engaged in the mismanagement of company assets, as a vehicle for Elliot Antebi.

37

247. In managing company assets, Ellemark had a duty to ensure that all transactions and actions it facilitated were conducted in accordance with legal and regulatory requirements, including proper authorization from the company's members.

248. Ellemark's management of company assets, as aforesaid, was performed without proper delegation of authority.

249. Ellemark's management of company assets, as aforesaid, was performed without written agreement.

250. Ellemark breached its fiduciary obligations to Plaintiff, as a member of Downtown NS LLC, as aforesaid, by allowing to be placed on Downtown NS LLC's property certain unsafe structure orders, vendor liens, and assignments of rents, thus exposing said assets to risk.

251. Ellemark breached its fiduciary obligations to Plaintiff, as a member of Downtown NS LLC, through its failure to maintain proper management records related to the activities and affairs of the company which Mr. Antebi managed for Plaintiff's benefit, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

**COUNT VI**
**BREACH OF CONTRACT**
**FOR SUMMER RENTAL**
**(Against Elliot Antebi and Rachel Antebi f/k/a Sutton)**

252. Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if fully set forth herein.

253. Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if fully set forth herein.

254. Elliot Antebi and Rachel Antebi f/k/a Sutton agreed to rent the Plaintiff's home for the summer of 2021 for $50,000. It was a valid agreement.

38

255. Plaintiff performed all his contractual obligations and delivered the premises to the Antebis for the summer of 2021.

256. The Antebis have failed to pay the rental fee as agreed upon, thereby breaching the parties' agreement, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

**COUNT VII**
**BREACH OF CONTRACT**
**FOR PINE TREE DRIVE**
**(Against Elliot Antebi and Rachel Antebi f/k/a Sutton)**

257. Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if fully set forth herein.

258. Elliot Antebi and Rachel Antebi f/k/a Sutton obtained certain personal loans from Plaintiff in connection with their property at Pine Tree Drive in Miami Beach, Florida.

259. Elliot Antebi and Rachel Antebi f/k/a Sutton promised to repay said loans at the time that the property was sold.

260. Elliot Antebi and Rachel Antebi f/k/a Sutton breached their agreements with Plaintiff by failing to repay Plaintiff's loans as promised.

261. In or about October 2021, Elliot Antebi and Rachel Antebi f/k/a Sutton requested Plaintiff to collateralize certain of Plaintiff's personalty in connection with a loan which would be repaid at the time of the sale of the Pine Tree Drive property.

262. Elliot Antebi and Rachel Antebi f/k/a Sutton committed to repaying the proceeds prior to the initial deadline of November 2021, or latest 60-90 days after Plaintiff's tender of the loan proceeds, but have failed to do so, despite repeated demands constituting a breach of that agreement.

263. Plaintiff performed all his obligations under the agreement, which was a valid

Case 1:26-cv-02647-NRM-JRC    Document 190-1    Filed 06/22/26    Page 41 of 64 PageID
#: 129
Case 1:24-cv-00520-JPC    Document 43    Filed 04/25/24    Page 40 of 61

and lawful agreement.

264.    As a direct and proximate result of said breach, Plaintiff has suffered damages.

## COUNT VIII
## BREACH OF CONTRACT
## RELATED TO MEMBERSHIP AND MANAGEMENT OF 169-171 BH LLC
## (Against Elliot Antebi)

265.    Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if fully set forth herein.

266.    There existed a joint venture between Elliot Antebi and Ely Eddi. In order to induce Plaintiff to make its contributions to 169-171 BH LLC, Elliot Antebi represented to Plaintiff that Plaintiff would receive, in exchange for his capital contributions, a seventy (70%) percent membership interest in 169-171 BH LLC.

267.    Elliot Antebi breached his contractual obligations to Plaintiff, vis-in relation to 169-171 BH LLC, through his misrepresentations of membership interests, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

268.    No written agreement governing 169-171 BH LLC's operations or management exists. Elliot Antebi, without authorization, stepped into the role of the "de facto" manager of the 169-171 BH LLC. By doing so, Elliot Antebi took upon himself a contractual duty to be responsible for the management of the Companies and their assets.

269.    Elliot Antebi breached his contractual obligations to Plaintiff, vis-à-vis his management of 169-171 BH LLC, including through his unauthorized disposal of company assets and acquiescence of high interest loans for personal gain and without prior disclosure to the other of the company's members, resulting in substantial damages to Plaintiff.

270.    Elliot Antebi breached his contractual obligations to Plaintiff, vis-à-vis his management of 169-171 BH LLC, through his failure to maintain proper management records

40

and efforts to restrict access to information related to the activities and affairs of the companies which Mr. Antebi managed for Plaintiff's benefit, resulting in substantial damages to Plaintiff.

271.    Elliot Antebi also breached his contractual obligations to Plaintiff, vis-à-vis his management of 169-171 BH LLC, by placing numerous charges on Plaintiff's credit card for work performed on property owned by 169-171 BH LLC, in excess of one hundred thousand dollars, including charges in December 2020 in connection with the construction of 169-171 BH LLC's new kitchen (and also Downtown NS's new kitchen) under the auspices that Mr. Antebi would have available funds shortly and would immediately repay Plaintiff. The sum was never repaid.

**COUNT IX**
**BREACH OF CONTRACT**
**RELATED TO MANAGEMENT OF 262 BH LLC**
**(Against Elliot Antebi)**

272.    Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if fully set forth herein.

273.    The parties' membership in 262 BH LLC evidences the existence of a joint venture, and a valid agreement between the parties related thereto.

274.    Elliot Antebi breached his contractual obligations to Plaintiff, vis-à-vis his management of 262 BH LLC, including through his taking of disproportionate shares of distributions and profits, resulting in substantial damages to Plaintiff.

275.    Elliot Antebi breached his contractual obligations to Plaintiff, vis-à-vis his management of 262 BH LLC, through his unauthorized disposal of company assets at 262 Mott Street, resulting in substantial damages to Plaintiff.

276.    Elliot Antebi breached his contractual obligations to Plaintiff, as a member of 262 BH LLC, through his unauthorized management and mismanagement of the company,

41

resulting in substantial damages to Plaintiff.

277.   Elliot Antebi breached his contractual obligations to Plaintiff, vis-à-vis his management of 262 BH LLC, through his failure to maintain proper management records and efforts to restrict access to information related to the activities and affairs of the companies which Mr. Antebi de facto managed for Plaintiff's benefit, resulting in substantial damages to Plaintiff.

278.   Elliot Antebi, in coordination with Ellemark, facilitated the unauthorized sale of company assets belonging to 262 BH LLC, including the sale of real property located at 262 Mott Street, New York, NY, without proper authorization from the members of the company, resulting in substantial damages to Plaintiff.

279.   As a result of the breaches, Plaintiff has suffered damages.

<u>COUNT X</u>
<u>BREACH OF CONTRACT</u>
<u>RELATED TO MANAGEMENT OF DOWNTOWN BH LLC</u>
<u>(Against Elliot Antebi)</u>

280.   Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if fully set forth herein.

281.   The parties' membership in Downtown BH LLC evidences the existence of a joint venture, and a valid agreement between the parties related thereto.

282.   Elliot Antebi's mismanagement of Downtown BH LLC and decision-making without proper business judgment and member authorization, constitutes a breach of fiduciary duty, resulting in substantial damages to Plaintiff.

283.   Elliot Antebi also engaged in unauthorized self-dealing by making significant disbursements to Ellemark out of company funds, resulting in substantial damages to Plaintiff.

284.   Elliot Antebi's mismanagement of Downtown BH LLC, as aforesaid, led to significant financial losses which Plaintiff was forced disproportionately to carry, resulting in

substantial damages to Plaintiff.

## COUNT XI
## BREACH OF CONTRACT
## RELATED TO MANAGEMENT OF DOWNTOWN NS LLC
### (Against Elliot Antebi)

285. Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if fully set forth herein.

286. The parties' membership in Downtown BH LLC evidences the existence of a joint venture, and a valid agreement between the parties related thereto.

287. Elliot Antebi breached his contractual obligations to Plaintiff, vis-à-vis his management of Downtown NS LLC, through his unauthorized management and mismanagement of the company, resulting in substantial damages to Plaintiff.

288. Elliot Antebi breached his contractual obligations to Plaintiff, vis-à-vis his management of Downtown NS LLC, through his actual or threatened unauthorized disposal of company assets, resulting in substantial damages to Plaintiff.

289. Elliot Antebi breached his contractual obligations to Plaintiff, as a member of Downtown NS LLC, by arranging high interest loans for personal gain and without prior disclosure to the other of the company's members, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

290. Elliot Antebi breached his contractual obligations to Plaintiff, vis-à-vis his management of Downtown NS LLC, by soliciting capital contributions from Plaintiff, but failing to make or call for matching contributions from other members. Plaintiff has not been repaid for these unmatched contributions.

291. Elliot Antebi breached his contractual obligations to Plaintiff, vis-à-vis his management of Downtown NS LLC, by allowing to be placed on Downtown NS LLC's property

43

certain unsafe structure orders, vendor liens, and assignments of rents, thus exposing assets to risk.

292.     Elliot Antebi breached his contractual obligations to Plaintiff, vis-à-vis his management of Downtown NS LLC, through his failure to maintain proper management records and efforts to restrict access to information related to the activities and affairs of the company which Mr. Antebi managed for Plaintiff's benefit, resulting in substantial damages to Plaintiff.

## COUNT XII
## BREACH OF GOOD FAITH AND FAIR DEALING FOR SUMMER RENTAL
### (AS AN ALTERNATIVE PLEADING TO COUNT VI)
### (Against Elliot Antebi and Rachel Antebi f/k/a Sutton)

293.     Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if fully set forth herein.

294.     In mid-June 2021, Elliot Antebi and Rachel Antebi f/k/a Sutton agreed to rent the Plaintiff's home for the summer of 2021 for $50,000. The rental agreement was a valid contract between the parties.

295.     Plaintiff delivered the premises to the Antebis for the summer of 2021 and performed all of his obligations under the agreement.

296.     The Antebis have failed to pay the rental fee as agreed thereby breaching the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

## COUNT XIII
## BREACH OF GOOD FAITH AND FAIR DEALING FOR PINE TREE DRIVE
### (AS AN ALTERNATIVE PLEADING TO COUNT VII)
### (Against Elliot Antebi and Rachel Antebi f/k/a Sutton)

297.     Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if fully set forth herein.

44

298.     Between June 2021 and October 2021, Elliot Antebi and Rachel Antebi f/k/a Sutton obtained certain personal loans and capital contributions from Plaintiff in connection with their property at Pine Tree Drive in Miami Beach, Florida.

299.     Elliot Antebi and Rachel Antebi f/k/a Sutton promised to repay said loans at the time that the Pine Tree Drive property was sold.

300.     Elliot Antebi and Rachel Antebi f/k/a Sutton breached the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

301.     Elliot Antebi and Rachel Antebi f/k/a Sutton requested for Plaintiff to collateralize certain of Plaintiff's property in connection with their acquisition of the Pine Tree Drive property.

302.     Elliot Antebi and Rachel Antebi f/k/a Sutton committed to repaying the loan proceeds prior to the initial deadline, but have failed to do so, thereby breaching the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

### COUNT XIV
### BREACH OF GOOD FAITH AND FAIR DEALING FOR 169-171 BH LLC
### (AS AN ALTERNATIVE PLEADING TO COUNT VIII)
### (Against Elliot Antebi)

303.     Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if fully set forth herein.

304.     Through their misreporting of membership interests, Elliot Antebi and Rachel Antebi f/k/a Sutton breached the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

305.     Elliot Antebi breached his contractual obligations to Plaintiff, vis-in relation to

45

Case 1:26-cv-02647-NRM-JRC    Document 190-1    Filed 06/22/26    Page 47 of 64 PageID
#: 135
Case 1:24-cv-00520-JPC    Document 43    Filed 04/25/24    Page 46 of 61

169-171 BH LLC, through his misrepresentations of membership interests, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

306.    No written agreement governing 169-171 BH LLC's operations or management exists. Elliot Antebi, without authorization, stepped into the role of the "de facto" manager of the 169-171 BH LLC. By doing so, Elliot Antebi took upon himself a contractual duty to be responsible for the management of the Companies and their assets.

307.    Vis-à-vis his management of 169-171 BH LLC, through his unauthorized disposal of company assets and arrangement of high interest loans for personal gain and without prior disclosure to the other of the company's members, Elliot Antebi breached the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

308.    Vis-à-vis his management of 169-171 BH LLC, through his failure to maintain proper management records and efforts to restrict access to information related to the activities and affairs of the companies which Elliot Antebi managed for Plaintiff's benefit, Mr. Antebi breached the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

**COUNT XV**
**BREACH OF GOOD FAITH AND FAIR DEALING FOR 262 BH LLC**
**(AS AN ALTERNATIVE PLEADING TO COUNT IX)**
**(Against Elliot Antebi)**

309.    Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if fully set forth herein.

310.    The parties' membership in 262 BH LLC evidences the existence of a joint venture, and an agreement between the parties related thereto.

311.    Vis-à-vis his management of 262 BH LLC, through his taking of

disproportionate shares of distributions and profits, Elliot Antebi breached the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

312.     Vis-à-vis his management of 262 BH LLC, through his unauthorized disposal of company assets at 262 Mott Street, Elliot Antebi breached the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

313.     Vis-à-vis his management of 262 BH LLC, through his unauthorized management and mismanagement of the company, Elliot Antebi breached the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

314.     Vis-à-vis his management of 262 BH LLC, through his failure to maintain proper management records and efforts to restrict access to information related to the activities and affairs of the companies which Mr. Antebi *de facto* managed Elliot Antebi breached the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

315.     Elliot Antebi, in coordination with Ellemark, facilitated the unauthorized sale of company assets belonging to 262 BH LLC, i.e. the real property located at 262 Mott Street, New York, NY, without proper authorization from the members of the company, thereby breaching the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

47

## COUNT XVI
## BREACH OF GOOD FAITH AND FAIR DEALING FOR DOWNTOWN BH LLC
## (AS AN ALTERNATIVE PLEADING TO COUNT X)
## (Against Elliot Antebi)

316.    Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if fully set forth herein.

317.    The parties' membership in Downtown BH LLC evidences the existence of a joint venture, and an agreement between the parties related thereto.

318.    Elliot Antebi's mismanagement of Downtown BH LLC and decision-making without proper business judgment and member authorization, constitutes a breach of fiduciary duty, resulting in substantial damages to Plaintiff.

319.    Elliot Antebi also engaged in unauthorized self-dealing by making significant disbursements to Ellemark out of company funds, resulting in substantial damages to Plaintiff.

320.    Elliot Antebi's actions constitute a breach of the implied covenant of good faith and fair dealing in connection with parties' agreement, and led to significant financial losses which Plaintiff was forced to carry disproportionately which in turn resulted in substantial damages to Plaintiff.

## COUNT XVII
## BREACH OF GOOD FAITH AND FAIR DEALING FOR DOWNTOWN NS LLC
## (AS AN ALTERNATIVE PLEADING TO COUNT XI)
## (Against Elliot Antebi)

321.    Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the Complaint as if fully set forth herein.

322.    The parties' membership in Downtown BH LLC evidences the existence of a joint venture, and an agreement between the parties related thereto.

323.    Vis-à-vis his management of Downtown NS LLC, through his unauthorized

48

management and mismanagement of the company, Elliot Antebi breached the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

324.    Vis-à-vis his management of Downtown NS LLC, through his actual or threatened unauthorized disposal of company assets, Elliot Antebi breached the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

325.    Vis-à-vis his management of Downtown NS LLC, by arranging high interest loans for personal gain and without prior disclosure to the other of the company's members, Elliot Antebi breached the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

326.    Vis-à-vis his management of Downtown NS LLC, by soliciting capital contributions from Plaintiff, but failing to make or call for matching contributions from other members, Elliot Antebi breached the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

327.    Vis-à-vis his management of Downtown NS LLC, by allowing to be placed on Downtown NS LLC's property certain unsafe structure orders, vendor liens, and assignments of rents, thus exposing said assets to risk, Elliot Antebi breached the implied covenant of good faith and fair dealing in connection with parties' agreement, resulting in substantial damages to Plaintiff.

328.    Vis-à-vis his management of Downtown NS LLC, through his failure to maintain proper management records and efforts to restrict access to information related to the activities and affairs of the company which Mr. Antebi managed for Plaintiff's benefit, resulting

49

in substantial damages to Plaintiff.

## COUNT XVIII
## CONVERSION
### (Against Elliot Antebi & Ellemark Management LLC)

329.    Plaintiff repeats and alleges each and every allegation set forth in the foregoing paragraphs of the complaint as if fully set forth herein.

330.    Elliot Antebi, utilizing his company, Ellemark, diverted Plaintiff's capital contributions and loan proceeds from the Companies in order to show Ellemark's fiscal solvency and for personal benefits unrelated to the Companies.

331.    Specifically, Elliot Antebi solicited, and through Ellemark accepted, capital contributions towards 169-171 BH LLC from Plaintiff into (A) Ellemark's Capital One Account (ending in 3603): (1) $1,870,000 on November 22, 2019, and (2) $50,000 on November 25, 2019 to Ellemark, and Elliot Antebi's Wells Fargo account (ending in $100,000 between October 24-25, 2019, and $50,000.00 in November 20, 2019.

332.    Inexplicably, however, the K-1 for 2019 for 169-171 BH LLC shows that Elliot Antebi is both a 30% owner and a 70% owner, and Mr. Eddi is not listed as an owner.

333.    Mr. Eddi is listed as a 30% owner of 169-171 BH LLC in 2020; however, the contribution attributable to Mr. Eddi is $862,049, while Mr. Antebi's capital contribution for 2020 was reflected to be $2,011,448.00.

334.    As a direct and proximate result of Elliot Antebi and Ellemark's conversion of both (i) Plaintiff's capital contributions to 169-171 BH LLC, and (ii) the benefit to Plaintiff associated with his membership interest, Plaintiff has suffered damages.

50

Case 1:26-cv-02647-NRM-JRC    Document 190-1    Filed 06/22/26    Page 52 of 64 PageID
#: 140
Case 1:24-cv-00520-JPC    Document 43    Filed 04/25/24    Page 51 of 61

## COUNT XIX
## PROMISSORY ESTOPPEL
### (Against Elliot Antebi and Rachel Antebi f/k/a Sutton)

335.    Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the complaint as if fully set forth herein.

336.    Elliot Antebi made specific representations and promises to Plaintiff (see ¶¶ 30, 141, 145), with regard to the business operations of the Companies as described herein with the reasonable expectation that Plaintiff would rely on such representations and promises. Elliot Antebi simultaneously omitted material information (see ¶¶ 365-368, 379, 388, 390-395) with regard to their business ventures and other dealings.

337.    Elliot Antebi and Rachel Antebi f/k/a Sutton made specific representations and promises to Plaintiff that they would (i) compensate Plaintiff for their rental of his summer home (see ¶ 155), (ii) remit to Plaintiff his share of the profits garnered from the Pine Tree Drive transaction (see ¶ 156-159), (iii) repay loans which Plaintiff secured at Elliot Antebi's urging (see ¶ 164-165).

338.    Plaintiff reasonably relied on Elliot Antebi's and Rachel Antebi f/k/a Sutton's specific representations and promises.

339.    As a result of Plaintiff's reasonable and detrimental reliance on the Elliot Antebi's and Rachel Antebi f/k/a Sutton's specific representations and promises, Plaintiff has suffered substantial damages.

## COUNT XX
## UNJUST ENRICHMENT
### (AS AN ALTERNATIVE TO PLAINTIFF'S BREACH OF CONTRACT CLAIMS)
### (Elliot Antebi and Rachel Antebi f/k/a Sutton and Ellemark Management LLC)

340.    Plaintiff repeats and alleges each and every allegation set forth in the foregoing paragraphs of the complaint as if fully set forth herein.

51

Case 1:26-cv-02647-NRM-JRC   Document 190-1   Filed 06/22/26   Page 53 of 64 PageID
Case 1:24-cv-00520-JPC   Document 43   Filed 04/25/24   Page 52 of 61
#: 141

341. By its conduct Elliot Antebi and Ellemark have been unjustly enriched.

342. As set forth herein, Plaintiff conferred benefits on all three Defendants.

343. Each of the Defendants knew and were aware of the benefits and should reasonably have expected to repay Plaintiff.

344. Equity and good conscience require that Defendants repay Plaintiff.

345. As a result of this unjust enrichment by Elliot Antebi and Ellemark, Plaintiff has suffered substantial damages for which he is entitled to be compensated.

## COUNT XXI
## FRAUDULENT INDUCEMENT
### (Against Elliot Antebi and Rachel Antebi f/k/a Sutton)

346. Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the complaint as if fully set forth herein.

347. Elliot Antebi and Rachel Antebi f/k/a Sutton made certain material misrepresentations to Plaintiff which they never intended to keep, with the intention that Plaintiff rely upon such representations. Specifically, Elliot Antebi and Rachel Antebi f/k/a Sutton offered to Plaintiff an option to invest in the Pine Tree Drive purchase and receive profits therefrom (see ¶ 156-157) in order to induce Plaintiff to forego the payment due to him from Elliot Antebi and Rachel Antebi f/k/a Sutton in connection with their rental of Plaintiff's summer home (see id.; see also ¶ 157).

348. Elliot Antebi and Rachel Antebi f/k/a Sutton made their representations to Plaintiff without any intention to remit the profits related to the sale of the Pine Tree Drive property to Plaintiff, as evidenced by their concealment from Plaintiff of closing of title related to that sale of the Pine Tree Drive property (see ¶ 170-172).

349. Plaintiff reasonably relied on the misrepresentations made by Elliot Antebi and

Rachel Antebi f/k/a Sutton, and agreed to invest in the Pine Tree Drive transaction based on those misrepresentations.

350.    As a result of Plaintiff's reasonable reliance on the misrepresentations made by Elliot Antebi and Rachel Antebi f/k/a Sutton, Plaintiff has suffered substantial damages.

## COUNT XXII
## FRAUD RELATED TO PINE TREE DRIVE
## (Against Elliot Antebi and Rachel Antebi f/k/a Sutton)

351.    Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the complaint as if fully set forth herein.

352.    Elliot Antebi and Rachel Antebi f/k/a Sutton concealed that closing of title related to their sale of the Pine Tree Drive property had concluded (see ¶ 170-172).

353.    Plaintiff had the right to receive at closing on the sale of the Pine Tree Drive property, the full return of his investment and all profits associated with therewith.

354.    Elliot Antebi and Rachel Antebi f/k/a Sutton concealed that closing of title related to their sale of the Pine Tree Drive property had occurred in order to prevent Plaintiff from (i) becoming aware of his rights to receive the return of his investments and the related profits on the sale of the Pine Tree Drive property, (ii) demand the return of his investment and the related profits, and (iii) receiving the return of his investments and the related profits.

355.    As a result of Elliot Antebi and Rachel Antebi f/k/a Sutton's willful omissions of material facts related to the status of the Pine Tree Drive property, Plaintiff patiently awaited the return of his investment and the receipt of his rightful profits, which never came.

356.    As a result of the aforesaid fraudulent conduct, and Plaintiff's reasonable reliance thereupon to Plaintiff's detriment, Plaintiff has suffered substantial damages.

53

## COUNT XXIII
## FRAUD RELATED TO 169-171 BH LLC
### (Against Elliot Antebi)

357.     Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the complaint as if fully set forth herein.

358.     Elliot Antebi made certain specific representations to Plaintiff related to 169-171 BH LLC's assets and operations, with the intent that Plaintiff rely thereupon.

359.     Specifically, Elliot Antebi, in order to induce Plaintiff to make significant capital contributions to 169-171 BH LLC (directly and through Ellemark) in October and November 2019 (see ¶ 28-29), promised Plaintiff a seventy (70%) percent membership interest in 169-171 BH LLC (see ¶ 30).

360.     However, Elliot Antebi reported to the company's accountants, and recorded on 169-171 BH LLC's tax returns, that Elliot Antebi was, in 2019, the 100% owner of 169-171 BH LLC.

361.     Elliot Antebi reported to the company's accountants, and recorded on 169-171 BH LLC's tax returns, that Elliot Antebi was, in 2020, Elliot Antebi was a 70% owner and Plaintiff was only a 30% member.

362.     Plaintiff relied on Elliot Antebi's representations that Plaintiff would be receiving a 70% membership interest in 169-171 BH LLC.

363.     In reasonable reliance on Elliot Antebi's representations, and at his direction, Plaintiff made significant capital contributions to 169-171 BH LLC, both directly and through Ellemark (see ¶ 28-29), tendered significant loans (see ¶ 58), paid for the replacement of the kitchen at the real property owned by 169-171 BH LLC, and caused the sewer repair charges for 169-171 BH LLC to be placed upon Plaintiff's credit card.

364. As a result of Plaintiff's reasonable reliance on the misrepresentations made by Elliot Antebi, Plaintiff has suffered substantial damages.

365. Elliot Antebi continues to conceal company books and records which are exclusively in his control which evidence his and Ellemark's de facto mismanagement of 169-171 BH LLC, self-dealing , and breaches of fiduciary duties to Plaintiff.

366. Specifically, Elliot Antebi concealed from Plaintiff the high-interest loans, hypothecations, pledges, and liens which Elliot Antebi allowed to be placed upon company assets without authorization (see ¶ 13, 45, & 56-61).

367. Elliot Antebi concealed his unauthorized sale of 169-171 BH LLC's assets (see ¶ 39) from Plaintiff.

368. Elliot Antebi concealed from Plaintiff that the former had been misreporting of membership interests to the IRS and state departments of taxation (see ¶ 26-37).

369. Because Elliot Antebi concealed material facts related to 169-171 BH LLC from Plaintiff, Plaintiff continued to make contributions and/or loans in order to carry 169-171 BH LLC's shortfalls (see ¶58) which were neither matched by Elliot Antebi nor returned to Plaintiff.

370. As a result of Elliot Antebi's willful omissions of material facts related to the status of the status of 169-171 BH LLC's operations and assets, Plaintiff has suffered substantial damages.

## COUNT XXIV
## FRAUD RELATED TO 169-171 BH LLC
### (Against Ellemark)

371. Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the complaint as if fully set forth herein.

372. Ellemark facilitated Elliot Antebi's concealment of certain material information from Plaintiff which Ellemark had a duty to disclose as a de facto manager of 169-171 BH LLC related to 169-171 BH LLC's assets and operations.

373. Plaintiff made significant capital contributions (see ¶ 28-29) to 169-171 BH LLC to Ellemark.

374. Plaintiff made to Ellemark, and Ellemark accepted, capital contributions towards 169-171 BH LLC into (A) Ellemark's Capital One Account (ending in 3603): (1) $1,870,000 on November 22, 2019, and (2) $50,000 on November 25, 2019 to Ellemark, and Elliot Antebi's Wells Fargo account (ending in $100,000 between October 24-25, 2019, and $50,000.00 in November 20, 2019.

375. Elliot Antebi represented to Plaintiff that the funds were to be utilized to secure a 70% interest in 169-171 BH LLC.

376. Plaintiff made said contributions to Ellemark, at the direction of Elliot Antebi (who exercised exclusive control over Ellemark) in return for a seventy (70%) percent membership interest in 169-171 BH LLC (see ¶ 30).

377. Inexplicably, however, the K-1 for 2019 for 169-171 BH LLC shows that Elliot Antebi is both a 30% owner and a 70% owner, and Mr. Eddi is not listed as an owner. Mr. Eddi is listed as a 30% owner of 169-171 BH LLC in 2020; however, the contribution attributable to Mr. Eddi is $862,049, while Mr. Antebi's capital contribution for 2020 was reflected to be $2,011,448.00.

378. Ellemark facilitated Elliot Antebi's misrepresentation to the I.R.S. and other of 169-171 BH LLC's taxing authorities on its tax returns that Plaintiff's 2019 contributions 169-171 BH LLC were made by Elliot Antebi and not Plaintiff; providing Plaintiff a zero (0%) percent

membership interest during that year.

379.     Ellemark continued to facilitate Elliot Antebi's misrepresentation's by concealing that Ellemark misapplied Plaintiff's capital contributions through Ellemark and misrepresented Plaintiff's ownership interest (see ¶ 28-29), leading to discrepancies in reported percentages and financial losses (see ¶ 190).

380.     In addition, after Elliot Antebi executed the mortgage splitter agreement and accompanying mortgage note on October 6, 2023 (see ¶¶ 13 and 45), said documents were recorded and then returned to Ellemark. Once recorded and returned to Ellemark, Ellemark (under the control of Elliot Antebi) took no efforts to notify Plaintiff, as a member of 169-171 BH LLC, of the existence of said documents or of even of the existence of the transaction.

381.     As a result of the aforementioned willful omissions of material facts related to Plaintiff's membership interest in 169-171 BH LLC, Plaintiff continued to make significant capital infusions therein and/or loans thereto. Ellemark and Elliot Antebi's utilized Plaintiff's funds for their own gain to show their financial strength and support their ownership interest in 169-171 BH LLC.

382.     As a result, Plaintiff has suffered substantial damages.

383.     Ellemark continues to conceal company books and records which are exclusively in its control which evidence its and Elliot Antebi's de facto mismanagement of 169-171 BH LLC, self-dealing, and breaches of fiduciary duties to Plaintiff, and Ellemark's receipt of significant cash disbursements (see ¶ 183) from 169-171 BH LLC.

## COUNT XXV
## FRAUD RELATED TO 262 BH LLC
## (Against Elliot Antebi and Ellemark)

384.     Plaintiff repeats and re-alleges each and every allegation set forth in the

57

foregoing paragraphs of the complaint as if fully set forth herein.

385.    Elliot Antebi and Ellemark continue to conceal company books and records in order to inhibit Plaintiff's investigation into their mismanagement of 262 BH LLC and Elliot Antebi's disproportionate receipt of profits and disbursements.

386.    Elliot Antebi utilized Ellemark as the vehicle for his fraud to facilitate the unauthorized sale of 262 BH LLC's assets (see ¶ 80-81) and conceal from Plaintiff said sale, as well as Elliot Antebi's receipt of a disproportionate share of profits and distributions from 262 BH LLC to Plaintiff's detriment.

387.    As a result of Plaintiff's reasonable reliance on the misrepresentations made by Elliot Antebi and Ellemark resulted in detriment, Plaintiff has suffered substantial damages.

388.    Elliot Antebi and Ellemark continue to conceal company books and records which are exclusively in their control which evidence their de facto mismanagement of 169-171 BH LLC, self-dealing, and breaches of fiduciary duties to Plaintiff, and disproportionate receipt of profits and distributions (see ¶ 78-83).

## COUNT XXVI
## FRAUD RELATED TO DOWNTOWN NS LLC
### (Against Elliot Antebi and Ellemark)

389.    Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the complaint as if fully set forth herein.

390.    Elliot Antebi and Ellemark continue to conceal company books and records which are exclusively in their control which evidence their de facto mismanagement of Downtown NS LLC, self-dealing, and breaches of fiduciary duties to Plaintiff.

391.    Elliot Antebi and Ellemark concealed from Plaintiff that they had allowed unsafe structure orders, vendor liens, and assignments of rents to be placed on Downtown NS

LLC's assets (see ¶ 133-138, 244 & 250).

392.    Elliot Antebi concealed from Plaintiff that it had arranged for high interest loans for personal gain and without prior disclosure to the other of the company's members, resulting in substantial damages to Plaintiff for which he is entitled to be compensated.

393.    Elliot Antebi then threatened to dispose of the assets of Downtown NS LLC to Plaintiff's detriment (see ¶ 46, 128, 201 & 241).

394.    Elliot Antebi and Ellemark continue to conceal company books and records in order to inhibit Plaintiff's investigation into the status of the transactions involving assets of Downtown NS LLC.

395.    Elliot Antebi and Ellemark continue to conceal company books and records in order to inhibit Plaintiff's investigation into their mismanagement of Downtown NS LLC in allowing unsafe structure orders, vendor liens, and assignments of rents to be placed on Downtown NS LLC's assets.

396.    As a result of the aforementioned willful omissions of material facts related to Downtown NS LLC's status and operations, Plaintiff continued to make significant capital infusions including a $310,000 loan deposit on July 31, 2020 into the attorney trust account of Elliot Antebi's real estate attorney (see ¶ 145)..

397.    Elliot Antebi promised Plaintiff on or just before July 31, 2020 that the full sum of $310,000 would be repaid with interest of 1.5% within the next 90 days.

398.    Elliot Antebi never intended to, and never did, fulfil his promise to Plaintiff.

399.    As a result of Plaintiff's reasonable reliance on the misrepresentations made by Elliot Antebi, Plaintiff has suffered substantial damages.

Case 1:26-cv-02647-NRM-JRC    Document 190-1    Filed 06/22/26    Page 61 of 64 PageID
#: 149
Case 1:24-cv-00520-JPC    Document 43    Filed 04/25/24    Page 60 of 61

**COUNT XXVII**
**GROSS NEGLIGENCE**
**(Against Elliot Antebi and Rachel Antebi f/ka Sutton)**

400.    Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs of the complaint as if fully set forth herein.

401.    The Individual Defendants have a duty to Plaintiff.

402.    By their grossly negligent conduct as aforesaid, the Individual Defendants have breached that duty, directly and proximately resulting in  substantial damages to Plaintiff for which he is entitled to be compensated.

**COUNT XXVIII**
**ACCOUNT STATED**
**(Elliot Antebi and Rachel Antebi f/k/a Sutton)**

403.    The parties have an established relationship and course of dealing insofar as Plaintiff has made personal loans to Elliot Antebi and Rachel Antebi f/k/a Sutton, and otherwise collateralized their debt based on their promises to repay said debt. Elliot Antebi and Rachel Antebi f/k/a Sutton made partial payments on the balance thereof but there remains due a substantial balance which continues to accrue as of the date that this Action has been commenced.

404.    Elliot Antebi and Rachel Antebi f/k/a Sutton have promised Plaintiff that they would repay the outstanding indebtedness. Elliot Antebi and Rachel Antebi f/k/a Sutton also made this representation to numerous persons who are non-parties to this lawsuit with the intention that said non- parties attempt to assuage Plaintiff; however, payment has not been forthcoming, requiring Plaintiff to initiate this Action.

405.    As a result of the failure by Elliot Antebi and Rachel Antebi f/k/a Sutton failure to pay the outstanding balance due, Plaintiff has suffered significant damages for which he is entitled to be compensated.

60

Case 1:26-cv-02647-NRM-JRC   Document 190-1   Filed 06/22/26   Page 62 of 64 PageID
Case 1:24-cv-00520-JPC   Document 43   Filed 04/25/24   Page 61 of 61
#: 150

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of

Plaintiff as follows:

*A.*   An Order that Elliot Antebi and Ellemark Management LLC produce for inspection all company books and records (including but not limited to bank account statements, loan agreements, repayment and amortization schedules, asset and liability statements, general ledgers, transaction and transfer documents, and all other documents and records within the possession of Ellemark Management LLC and Elliot Antebi relating to the management and operation of the Companies.

B.   Compensatory damages and general damages in an amount that will conform to the proof at time of trial;

C.   Consequential Damages;

D.   Punitive or exemplary damages according to proof;

E.   Restitution, disgorgement of profits, and other equitable relief;

F.   Attorneys' Fees;

G.   Costs of suit incurred herein;

H.   Pre-judgment interest as provided by law; and

I.   Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all the triable issues.

**OFFIT KURMAN, P.A.**
Attorneys for Plaintiff

Date: April 25, 2024          By:   */s/Barry S. Crane, Esq.*
                                    Barry S. Crane, Esq.
                                    **Offit Kurman, P.A.**
                                    590 Madison Avenue, 6th Floor New
                                    York, NY 10022
                                    T: 973-245-9904
                                    Email: Barry.Crane@Offitkurman.com

61

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF NEW YORK**

ELY EDDI                        )
                                  )
          Plaintiff,        )    CIVIL ACTION NO.:1:24-cv-000520-JPC

against                    )
                                  )

ELLIOT ANTEBI, RACHEL ANTEBI F/K/A
SUTTON, AND ELLEMARK MANAGEMENT
LLC,                           )
                                  )
         Defendants.      )

**AFFIDAVIT OF SERVICE**

STATE OF NEW JERSEY     )
                             ) ss.:
COUNTY OF BERGEN       )

HOLLY WILSON, being duly sworn, deposes and says:

I am over 18 years old, am not a party to this action, and reside within the State of New Jersey.

On April 26, 2024, I served a copy of the within DOCUMENT(S) SECOND AMENDED COMPLAINT on the below-named parties by mailing a true and correct copy of same to the addresses indicated below, enclosed in a postpaid properly addressed wrapper, via Federal Express and first class mail, in an official depository under the exclusive care and custody of the United States Postal Service located within the State of New Jersey.

**ELLIOT ANTEBI**
**1448 E. 8TH Street**
**Brooklyn, NY 11230**

**RACHEL ANTEBI F/K/A SUTTON**
**1448 E. 8TH STREET**
**Brooklyn, NY 11230**

**Ellemark Management LLC (counsel was served via Pacer efiling)**
**200 park Avenue**
**Suite 1700**
**New York, NY 10166**

Holly Wilson

Subscribed and sworn to before me
this 26 day of April 2024

_____
Notary Public

**FAITH MIROS**
**Attorney at Law**
**State of New Jersey**

 **Shipment Receipt**

## Address Information

**Ship to:**
Elliot and Rachel Antebi

1448 E. 8th Street

BROOKLYN,  NY
11230
US
973.245.9904

**Ship from:**
Holly Wilson

21 Main Street
Suite 158
Hackensack,  NJ
07601
US
7322181800

## Shipment Information:
Tracking no.: 776122271915
Ship date: 04/26/2024
Estimated shipping charges:  12.22 USD

## Package Information
Pricing option: FedEx Standard Rate
Service type: Priority Overnight
Package type: FedEx Envelope
Number of packages: 1
Total weight: 1   LBS
Declared Value: 0.00  USD
Special Services:
Pickup/Drop-off: Drop off package at FedEx location

## Billing Information:
Bill transportation to: Hackensack, NJ-146
Your reference:  EDDI/ANTEBI
PO no.:
Invoice no.:
Department no.:

**Thank you for shipping online with FedEx ShipManager at fedex.com.**

### Please Note

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.